Marc S. GOLDBERG,
Plaintiff–Appellant,

v.

HOUSEHOLD BANK, F.S.B., and
Eugene J. Culbertson,
Defendants–Appellees.

No. 89–1398.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1989.

Decided Dec. 7, 1989.

Elwood S. Simon (argued), Schlussel, Lifton, Simon, Rands, Galvin & Jackier, Southfield, Mich., Bruce E. Gerstein, Garwin, Bronzaft, Gerstein & Fisher, New York City, Eugene A. Spector, Philadelphia, Pa., Gregory A. Friedman, Friedman & Holtz, Chicago, Ill., for plaintiff-appellant.

Steven P. Handler (argued), William P. Schuman, Susan E. Cox, Steven S. Scholes, McDermott, Will & Emery, Chicago, Ill., James C. Murray, Jr., Patrick J. Lamb, Daniel A. Kaufman, Katten, Muchin & Zavis, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Marc S. Goldberg bought 200 shares of stock in Freedom Federal Savings Bank on August 10, 1987, at the market price of $25.50. Freedom Federal had announced an upbeat quarterly accounting showing its pre-tax earnings at $8.65 million, or $1.45 per share after taxes, for the first six months of the year. Household Bank, f.s.b., had indicated an interest in acquiring Freedom Federal, which replied that it was intrigued. Speculation about the bid's prospects fueled trading in the stock.

On September 22, 1987, when its price was $29.25, Freedom Federal issued a press release saying that its quarterly statement of earnings had been mistaken. Restated pre-tax earnings came to only $7.83 million for the first six months, or $1.16 per share after taxes. The price immediately dropped to $25.50, where it stayed until the market crashed in mid-October. Household Bank reduced its offer to $31 million, worth $18.16 per share. Freedom Federal accepted in December 1987, and the merger took place in August 1988.

■ Goldberg filed this suit under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the SEC's Rule 10b–5, 17 C.F.R. § 240.10b–5, contending that Freedom Federal defrauded him by overstating its profits for the second quarter of 1987. He sought $3.75 per share, the amount the stock declined on the date the truth came out. The defendants replied that he could not recover anything, because the price after the revelation was no worse than what he paid. Yet a firm that lies about some assets cannot defeat liability by showing that other parts of its business did better than expected, counterbalancing the loss. When markets are liquid and respond quickly to news, the drop

when the truth appears is a good measure of the value of the information, making it the appropriate measure of damages. *Flamm v. Eberstadt*, 814 F.2d 1169, 1179–80 (7th Cir.1987); Daniel R. Fischel, *Use of Modern Finance Theory in Securities Fraud Cases Involving Actively Traded Securities*, 38 Bus.Law. 1, 12–13, 17–19 (1982).

■ Goldberg came up short on the facts rather than the theory. The district court granted Household Bank's motion for summary judgment, 1989 WL 8503, 1989 U.S. Dist. LEXIS 934 (N.D.Ill.), holding that Goldberg had produced no evidence that Freedom Federal acted with the state of mind that is an essential ingredient of every action under Rule 10b–5. The judge also denied Goldberg's request to certify the case as a class action and dismissed without prejudice a pendent claim under state law. Goldberg appeals only the decision on the merits of the federal securities claim.

■ *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), holds that only intentional misstatements violate § 10(b) and Rule 10b–5. Recklessness demonstrates "intent" for this purpose. *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1044–45 (7th Cir.1977). So Goldberg had to show that Freedom Federal was reckless, at a minimum, in stating semi-annual earnings at $8.65 million rather than $7.83 million. Restatements of earnings are common. Freedom Federal's press release said that the change reflected the discovery that interest had been computed incorrectly on a portion of its loan portfolio. As this was not an unusually large adjustment, Goldberg had an uphill battle. Especially so because during fall 1987 Freedom Federal was trying to auction itself off. It had been on the block since it retained an investment bank in May 1987 for the purpose of stirring up interest (and estimating the price it should try to get if the fish were biting). It would not have made much sense intentionally to overstate earnings, only to depress the estimate before completing the sale. So the natural inference is that Freedom Federal's auditors made an

honest error, of the kind endemic when firms try to release figures as soon as possible to a market ravenous for news. A plaintiff who imputes to a defendant actions that "make[ ] no economic sense" needs solid proof to survive a motion for summary judgment. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Mid–State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir.1989).

Defendants took Goldberg's deposition and asked him what reason he had to think that Freedom Federal intentionally exaggerated its earnings. He replied that he had none. For example:

> Q. List for me all of the evidence that you have, all of the facts of which you are aware that leads you to believe that the error was either innocent or intentional.
>
> A. I have no evidence.
>
> Q. One way or the other?
>
> A. That's correct.

The motion for summary judgment followed hard on the heels of this concession. Defendants offered no evidence of their own and were content to observe that Goldberg had confessed having none either. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Taking Goldberg at his word, the district court stopped the contest.

Summary judgment is designed to cut short cases in which one side or the other is doomed. We do not have facts that cry out fraud unless explained; we have a common situation, the aftermath of negligence at most unless the investor knows something casting it in a more sinister light. Goldberg doesn't, so the case properly ended. Securities litigation is expensive to the parties in money, and to the court in time; it should be brought to a conclusion at the first opportunity.

Goldberg protests that the judge ignored the allegations of his complaint, but Fed.R. Civ.P. 56(e) says that in responding to a motion for summary judgment a party "may not rest upon the mere allegations or denials of the adverse party's pleading, but

... must set forth specific facts showing that there is a genuine issue for trial." As *Celotex* said, 477 U.S. at 324, 106 S.Ct. at 2553, the party opposing the motion must supply "the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves". Goldberg had pleadings and nothing but.

Seeking to explain the lack of evidence, Goldberg says that he did not have sufficient opportunity for discovery. If this is an explanation, it surely is not a justification. Goldberg was not in the predicament of trying to meet a motion for summary judgment while his requests for discovery went unanswered. He made no requests for discovery. At all events, Rule 56(f) supplies the device with which to raise considerations of this kind. "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition", the court may defer consideration of the motion to allow additional fact-gathering. Goldberg did not file an affidavit under Rule 56(f), and an appellate brief is the wrong place to raise, for the first time, an argument that things moved too expeditiously in the district court. *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988).

AFFIRMED.