UNITED STATES of America for the Use and Benefit of WESTINGHOUSE ELECTRIC SUPPLY COMPANY, Plaintiff–Appellee,

v.

Purdy L. SISSON, Defendant,

and

Thomas S. Mackie, Defendant–Appellant.

No. 90–1273.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1990.

Decided March 8, 1991.

Timothy J. Abeska, Roemer & Mintz, South Bend, Ind., for plaintiff-appellee.

D.J. Sartorio, Mark T. O'Toole, Tribler & Orpett, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

PER CURIAM.

A. *Background*

Plaintiff Westinghouse Electric Supply Company was the subcontractor on a government-let construction project at the Grissom Air Force Base in Peru, Indiana. As required under the Miller Act (40 U.S.C. §§ 270a *et seq.*), the general contractor posted the necessary payment bonds by signing two sureties, both of whom guaranteed payment to the subcontractor if the general contractor became insolvent.[1] After the contract with the general contractor, Cassard Construction Company, went into effect, Westinghouse performed completely, in accordance with its agreement with subcontractor GM Electric. However, Cassard never paid subcontractor GM Electric for Westinghouse's work, and in May 1988, Cassard filed for bankruptcy. Westinghouse sued for remuneration from the two payment bond sureties for services and materials rendered to this project from February through July 1988. One of the sureties, Purdy L. Sisson, is not involved in this appeal. The other surety, Thomas S. Mackie, is resisting payment. The amount sought by Westinghouse was $96,501.03 plus pre-judgment interest.

In July 1988, Westinghouse sent the notice required by the Miller Act to Sisson and Mackie requesting payment from the Cassard Construction Company, Inc., the general contractor on the project under government contract No. DACA27–87–C–0062, dated July 30, 1987 (see n. 2 *infra*). Cassard filed for bankruptcy in 1988, and Westinghouse was unpaid for the materials that it had supplied. Therefore its March 1989 complaint sought payment under Sisson's and Mackie's payment bonds that Cassard had posted.

In October 1989, Westinghouse filed a motion for summary judgment against

---

1. Under the terms of a payment bond, the sureties guarantee the payment of the subcontractors and the suppliers of the bonded contractor.

A payment bond becomes binding on the award of the contract to the contractor.

Mackie. The motion showed that in the previous month Westinghouse had recovered a default judgment against co-defendant Sisson for $102,673.29 and that any judgment it might obtain against co-defendant Mackie would be joint and several. The motion also noted that any amount Westinghouse eventually recovered from Sisson would constitute a credit against the judgment it might recover from Mackie. The motion sought summary judgment against Mackie for $103,052.49, including prejudgment interest and costs. The motion was supported by the affidavit of a Westinghouse Region Credit Manager and by a brief.

In turn, Mackie filed his own motion for summary judgment, relying on his prior answer asserting that he was not liable for any materials provided prior to May 13, 1988, the allegedly effective date of his payment bond. Mackie attached to his motion the affidavit of Stephen E. Smith, a former district counsel for the Department of the Army, stating that the effective date of Mackie's May 5, 1988, payment bond was May 13, 1988, when it was accepted by the Department of the Army. Smith did not mention retroactivity but quite properly asserted that "Mackie had no liability or responsibility on the contract prior to May 13, 1988." (R. 28, pp. 2, 3).

Upon consideration of the motions for summary judgment, Judge Miller filed a memorandum and order on January 3, 1990, granting Westinghouse's motion for summary judgment. The district judge entered summary judgment against Mackie for $103,052.49 plus interest from the date of the judgment. In reaching his decision, Judge Miller relied on the face of Mackie's surety bond and on the relevant Federal Acquisition Regulation, codified at 48 C.F.R. § 28, allowing the substitution of a new surety for all or part of the obligations assumed by an original surety. The judgment provided further that any recovery that Westinghouse might obtain from Sis-

son would constitute a credit against the summary judgment against Mackie. We affirm.

## B. *Analysis*

Mackie argues that his May 5, 1988, payment bond, which allegedly became effective on May 13, 1988, was not retroactive, so that he was not liable to Westinghouse for any materials it delivered under the government contract that was listed on the bond.[2] Rather, Mackie argues that his predecessor surety, A.G. Merklinger, was liable for the amount of plaintiff's claim until the date Mackie believes his surety obligation vested—May 13, 1988. In support of this claim, Mackie cites the aforementioned affidavit of Stephen E. Smith, which does not refer to the Miller Act, the Federal Acquisition Regulations or anything contained within the four corners of the surety bond. It does not reach the retroactivity question but merely concludes, as all agree, that Mackie's liabilities did not attach until May 13, 1988. As Judge Miller's opinion points out, no information submitted by Mackie shows that his payment bond was not to be retroactive. Although the bond was executed on May 5, 1988, this does not mean that Mackie bore no obligation for the period of the contract predating the execution of the bond. The standard payment bond form contains boilerplate language requiring that it must be executed on the same or a later date than the date of the government contract, which was July 30, 1987.

Mackie admits that his payment bond substituted for A.G. Merklinger's payment bond of August 8, 1987 (Exh. 4 to R. 28). Merklinger was removed as a surety in May 1988 due to "legal problems" that developed. Merklinger's payment bond covered the Grissom Air Force Base contract of July 30, 1987, and was for "payment of the sum shown opposite the name of the surety," namely, $2,500,000. It covered "material * * * in the prosecution of

2. Although Mackie's payment bond lists August 24, 1988, as the date of the Grissom Air Force Base contract No. DACA27–87–C–0062, the correct date is July 30, 1987. See Exh. A to complaint and R. 39 at 2. This date has not been contradicted by Mackie or by anything in the record. Mackie executed the bond on May 5, 1988, also illustrating the incorrectness in listing August 24, 1988, on the bond as the underlying government contract date.

the work provided for" in government contract No. DACA27–87–C–0062 (Exh. 4 to R. 29). Mackie's bond contained identical language (except for an increase in the obligation), thus plainly illustrating its retroactivity.

The Miller Act was intended by Congress to provide protection to those material suppliers, like Westinghouse, whose labor and materials go into public projects. It requires the posting of surety bonds because normal state mechanics' lien rights are unavailable to subcontractors who perform work on federal projects. The Act's purpose is remedial, and all parties to the litigation agree that it should be liberally construed in favor of Westinghouse's recovery. See *United States ex rel. Morris Construction, Inc. v. Aetna Casualty Ins. Co.*, 908 F.2d 375 (8th Cir.1990) (construction company that contracted with subcontractor of prime contractor could recover under Miller Act); *United States ex rel. Consolidated Pipe & Supply Co. v. Morrison–Knudsen Co., Inc.*, 687 F.2d 129 (same) (6th Cir.1982).

As the district judge noted, Mackie's payment bond contained no language limiting the extent of the obligation to the period after its execution. It refers simply to the July 30, 1987, government contract number without foreshortening the extent of Mackie's obligation. While the regulations provide that a new surety bond "covering all or part of the obligations" on a previously approved bond may be substituted for the original bond, 48 C.F.R. § 328, the penal sum on the Mackie bond was for $2,664,-450, which was $164,450 more than the amount of the Merklinger bond. This is a further showing of the lack of merit of Mackie's non-retroactive argument, for if Mackie's bond were intended to be non-retroactive the penal sum would undoubtedly have been decreased. The record simply fails to show that Mackie was not to be liable to the same extent as his predecessor surety Merklinger, who was clearly obligated under the plain language of his August 8, 1987, payment bond to cover those February–July 1988 Westinghouse materials prior to his being removed as surety in May 1988.

We agree with the district judge that Mackie's motion for summary judgment was properly denied because he did not show that his obligations as surety were limited to the period after May 13, 1988. Since Westinghouse sufficiently showed that Mackie was liable to it for these materials under his Miller Act bond and no genuine issue of material fact was presented by Mackie, summary judgment for Westinghouse was appropriate. *Goldberg v. Household Bank, F.S.B.*, 890 F.2d 965, 967–968 (7th Cir.1989).

Judgment affirmed.