Lynne A. SCHWARTZ, Plaintiff,

v.

SYSTEM SOFTWARE ASSOCIATES, INC., Roger E. Covey, and David L. Harbert, Defendants.

No. 91 C 1154.

United States District Court, N.D. Illinois, E.D.

July 18, 1991.

---

Ronald L. Futterman, Steven P. Schneck, Hartunian, Futterman & Howard, Chicago, Ill., I. Stephen Rabin, Joseph P. Garland, Law Offices of I. Stephen Rabin, New York City, for plaintiff.

Joel S. Feldman, Lowell E. Sachnoff, Sachnoff & Weaver, Ltd., Chicago, Ill., for defendants.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This action originates from an alleged securities fraud perpetrated upon thousands of purchasers. Each purchaser is alleged to have suffered a relatively small loss, making it not economically feasible for each of them to bring an individual action. In other words, plaintiffs claim that this is a typical class action.

*Facts*

To curtail a decline in the price of its stock, defendant System Software Associates, Inc. ("System Software" or "SSA") allegedly made misrepresentations to the market.[1] On January 14, 1991, Scott Smith, a well known stock analyst, downgraded SSA stock from "neutral" to "unattractive" and the price of SSA common stock dropped. Defendant David L. Harbert, SSA's chief financial officer, in a statement made the same day and reported by the Dow Jones News Wire, denied that any "internal developments" accounted for the stock's decline and stated that the company was comfortable with its earnings estimates of about $1.85 to $1.90 per share for the fiscal year (the January 14 statement).

However, when SSA released the actual results of the 1991 first quarter (which ended January 31, 1991) on February 19, 1991, the net income reported was $0.31 per share. That amount included an unusual one-time benefit of $0.09 per share. Consequently, stock analysts reduced their predictions for the fiscal year. During the next two days, the price of the stock fell 34%.

Plaintiffs in this proposed class action allege that the January 14 statement misrepresented material facts on two issues. First, defendants knew (or recklessly did not know) that SSA's earnings would not be as great as Harbert suggested. Second, they knew (or recklessly did not know) that there were internal developments that caused the drop in the price of the stock. Plaintiffs bring claims against all defendants under § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b–5; for common law fraud; and for negligent misrepresentations. Further claims are brought against Harbert and defendant Roger E. Covey, president of SSA, as controlling persons in the fraud.

Plaintiff here, Lynne A. Schwartz, has moved for class certification pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3). Ms. Schwartz seeks to represent the class of all those who purchased System Software common stock (other than defendants) between the time that the alleged false statements were made on January 14, 1991 and the time that SSA's poor performance was disclosed on February 19, 1991. Ms. Schwartz purchased fifty shares of SSA common stock for $26.3125 per share on January 15, 1991. She purchased this

1. For the purposes of this motion the facts have been compiled from plaintiffs' complaint.

stock on the recommendation of her husband, who is a branch manager for Prudential–Bache. Prudential–Bache is a market maker in SSA stock.

*Discussion*

Rule 23(a) permits a class action if the following requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, a plaintiff in a Rule 23(b)(3) action must demonstrate "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Defendants' arguments against certification concern only two of these requirements: Ms. Schwartz's fair and adequate protection of the interests of the class and the typicality of her claims.

*1. Adequate Protection of Interests*

Ms. Schwartz is an adequate class representative. Defendants unsuccessfully attempt to persuade this court to the contrary by pointing to certain statements in Ms. Schwartz's deposition. Defendants' contend that Ms. Schwartz was unaware that this action was pending (in her name) until two months after it was filed, that she could not have read or understood it before then, could not identify all the defendants, and finally, that she could not "recite with accuracy the gist of her claim."

Plaintiff refutes this by stating that due to the strain of the deposition, she made a mistake regarding when she first read the complaint (she actually saw a copy within a week after it was filed) and further, prior to filing she had discussed the suit with her husband, whom she authorized to seek counsel.

In addition, plaintiff has convincingly shown that she does understand the nature of her complaint and that she has fulfilled the responsibilities of a class representative. During her deposition, in response to a question asking what Harbert had done wrong, Ms. Schwartz stated, "Mr. Harbert said the earnings were going to be better than they were and they were not." This, in lay person's terms, is precisely what the suit is about. In addition to understanding the nature of her suit, Ms. Schwartz has been a diligent litigant. She has responded to written discovery, produced documents, and attended her deposition.

Moreover, even if defendants' claims concerning Ms. Schwartz's adequacy were accurate, the Supreme Court has held that persons with less impressive characteristics than Ms. Schwartz may meet this requirement. In *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), the Court held that notwithstanding the fact that the named plaintiff did not understand the complaint (as well as most of the English language), did not know who the defendants were or what their misconduct was, and had little knowledge of what the lawsuit was about, she was nonetheless qualified to represent the class. The Court held that she was an adequate representative because the careful investigation by her attorneys had led to grave fraud charges based on reasonable beliefs. A particularly relevant portion of the Justice Black's opinion states:

> "Rule 23(b), like the other civil rules, was written to further, not defeat the ends of justice. The serious fraud charged here, which of course has not been proven, is clearly in that class of deceitful conduct which the federal securities laws were largely passed to prohibit and protect against. There is, moreover, not one word or one line of actual evidence in the record indicating that there has been any collusive conduct or trickery by those who filed this suit...."

*Surowitz*, 383 U.S. at 373–74, 86 S.Ct. at 851. All of this is true of the present case as well. Ms. Schwartz's attorneys have conducted a careful investigation and de-

fendants have made no allegations that plaintiffs are acting collusively in bringing this action. Furthermore, Ms. Schwartz has, as noted above, performed all of her duties as a class representative. Thus, under any interpretation of Ms. Schwartz's statements at her deposition, she has met the standard set forth by *Surowitz.*

*2. Typicality of Claim*

Defendants' second argument against certification of the class is that Ms. Schwartz's claim is atypical. Ms. Schwartz, on the other hand, asserts that her claim is typical since she, like the other members of the proposed class, relied on the integrity of the market price to reflect accurate information. She claims also to have suffered injury because of defendants' dissemination of false information. On the issue of typicality, defendants make two unpersuasive arguments.

First, defendants aver that because Ms. Schwartz purchased the SSA stock in reliance on her husband's recommendation rather than on the market, her claim is atypical. "An individual asserting a common law fraud claim must prove reliance on the challenged misstatement." Fischel, *Efficient Capital Markets, The Crash, And The Fraud On The Market Theory,* 74 Cornell Law Review 907 (1989); *See also West v. Western Cas. and Sur. Co.,* 846 F.2d 387, 393 (7th Cir.1988) *citing General Motors Acceptance Corp. v. Central Nat'l Bank,* 773 F.2d 771, 778 (7th Cir. 1985). Plaintiffs in this proposed class action intend to rely on the "fraud on the market" theory. Since most investors do not read the documents or hear the speech alleged to be fraudulent, the "fraud on the market" theory allows those investors to sue by "interpreting the reliance requirement to mean reliance on the integrity of the market price rather than reliance on the challenged disclosure." *Id.* at 908. Recently a number of courts have adopted the theory to allow more plaintiffs/investors to satisfy the 'reliance' requirement.

In *Basic Inc. v. Levinson,* 485 U.S. 224, 245–47, 108 S.Ct. 978, 990–91, 99 L.Ed.2d 194 (1988), the Court held that reliance is presumed if the plaintiff merely claims that he or she relied on the integrity of the market price (or believed that the price paid was equal to the stock's value). Ms. Schwartz has done this. The fact that Ms. Schwartz relied on a broker's advice, even a broker who was also her husband, does not rebut the presumption that she relied on the price reported by the broker being an accurate reflection of the stock's value. This court agrees with Judge Marshall's observation that, "... it is likely that many investors rely upon information digested by others and not simply on 'the market' as such." *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 788 (N.D.Ill.1984) (Marshall, J.). Investigation into these "others", or the information they relied upon, is unnecessary in a "fraud on the market" case.

Defendant's second argument regarding typicality is raised for the first time in a surreply memorandum.[2] Defendants' claim that because plaintiff's husband is employed by a market maker in SSA stock, he had a special interest in the sale of the stock and relied on different factors than would a typical investor. Defendants cite *McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331 (N.D.Ill.1982) (Getzendanner, J.) to support the assertion that a market maker would be an atypical plaintiff in a fraud on the market case. They then conclude that since Ms. Schwartz relied on the advice of someone who relied on factors different from other investors, she is subject to the unique defense of nonreliance on the market and is therefore atypical. That conclusion is unfounded.

> "A market maker in a particular security, as defined by the NASD [National Association of Securities Dealers] manual, is a dealer who either regularly publishes bid and ask quotations in an interdealer system or furnishes such quotations on request, and who is 'ready, willing, and able' to trade reasonable quanti-

2. The court, believing the "additional information" raised in the surreply might be relevant, permitted the surreply even though the information was available to defendants when they filed their first memorandum.

ties of the security in which he is making a market to other dealers at his quoted prices."

*McNichols*, 97 F.R.D. at 344. Defendants are thus correct that market makers rely on different factors than other investors when deciding whether to invest in a particular security. Here, however, the market maker is not attempting to be the class representative (as was the case in *McNichols*), so the factors Mr. Schwartz and his employer relied upon are irrelevant. Certainly it does not rebut the presumption that Ms. Schwartz relied on the market. As has already been explained, the fact that Ms. Schwartz did not study the market herself does not affect the presumption that she relied on the integrity of the market to reflect the true price of the stock. Similarly, the fact that Ms. Schwartz bought the stock via an entity which does not necessarily rely on the integrity of the market does not affect that presumption.

Therefore, Ms. Schwartz has demonstrated both that she will be an adequate representative of the class interests and that her claims are typical of those of the proposed class members. She has met all the conditions for certification under Rule 23.

### Conclusion

The motion for class certification is granted. The class will consist of those persons (not including defendants) who purchased System Software Associates, Inc. common stock during the period of time between the January 14, 1991 statement and the performance disclosure of February 19, 1991.