Janet ZIEMACK, Kenneth Z. Slater, and Ellen Z. Slater, Herbert Eisenstadt, Joseph Meyer, Harvey Meyer, and Brenda Drucker, Plaintiffs,

v.

CENTEL CORPORATION, John P. Frazee, Jr., and J. Stephen Vanderwoude, Defendants.

No. 92 c 3551.

United States District Court, N.D. Illinois, Eastern Division.

June 7, 1994.

Michael David Craig, Richard S. Schiffrin, Schiffrin & Craig, Ltd., Buffalo Grove, IL, for plaintiffs.

Christina M. Tchen, Susan Getzendanner, Matthew Robert Kipp, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case comes before this court on defendants' Motion to Dismiss plaintiffs' Consolidated Second Amended Complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). For the reasons stated below, this court denies the motion.

## BACKGROUND

This is a securities fraud class action in which the plaintiff alleges violations of the federal securities laws and common law fraud. The securities law violations are premised on the theory of "fraud on the market" based upon statements by Centel relating to a decision to put the corporation up for sale. The plaintiffs bought Centel common stock between January 23, 1992 and May 27, 1992 (the "Class Period").

Plaintiffs allege that certain statements made by Centel in late 1991 and early 1992 misled them into believing that Centel's stock was seriously undervalued. For example, Centel's Chairman and Chief Executive Officer said in December 1991 that Centel's stock was "well below ... its private market valuation" and that it was worth $65 per share, more than twice the then prevailing market price. The plaintiffs claim that they relied on the misrepresentations and purchased the stock at $41 per share or more, prices that they now claim were overinflated. On May 27, 1992, Centel announced a merger with Sprint and the next day the stock traded at $32 per share. On March 8, 1993, the Centel–Sprint merger officially closed and the stock traded at $42.30/share.

## DISCUSSION

■ The standard governing this court's decision on a Rule 12(b)(6) motion is well

established. Only if the allegations of the complaint, and all reasonable inferences drawn therefrom, could not support any cause of action may this court grant the motion. *See generally* Charles Wright & Arthur Miller, 5A *Federal Practice and Procedure:* Civil 2d § 1357 (West Publishing, 2d ed. 1990). The court must interpret ambiguities in the complaint in favor of the plaintiff, and the plaintiff is free, in defending against the motion, "to allege without evidentiary support any facts [it] pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle [it] to judgment." *Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 79 (7th Cir.1992).

The Securities Exchange Act of 1934 Section 10(b) provides that it is unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). The Securities and Exchange Commission's Rule 10b–5, which was promulgated pursuant to § 10(b), states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,
>
> . . . in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

To state a viable claim under § 10(b) and Rule 10b–5, a complaint must allege that while buying or selling securities the defendant, acting with scienter, made a false material representation or omitted to disclose ma-terial information and that plaintiff's reliance on the defendant's actions caused plaintiff's injury. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), *reh'g. denied,* 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976).

## A. Fraud on the Market

In the Second Amended Complaint, plaintiffs allege that the defendants participated in a course of conduct that operated as a "fraud on the market" in violation of Section 10(b) of the Securities Exchange Act ("the Act") and Rule 10b–5. (Second Amended Complaint ¶ 95). The defendants claim in the Motion to Dismiss that the plaintiffs failed to plead fraud on the market.

The United States Supreme Court in *Basic Inc. v. Levinson,* 485 U.S. 224, 241–42, 108 S.Ct. 978, 988–89, 99 L.Ed.2d 194 (1988) explained that fraud on the market theory is premised upon the idea that in an open and developed securities market, the availability of information both accurate and inaccurate influences the price of stock traded on the market. As this court held in *Schwartz v. System Software Associates, Inc.,* fraud on the market theory allows a plaintiff who relied on the integrity of the market but never heard the allegedly fraudulent statements to sue. 138 F.R.D. 105, 108–09 (N.D.Ill.1991); 813 F.Supp. 1364 (N.D.Ill. 1993). The Seventh Circuit determined in *Flamm v. Eberstadt,* that if a plaintiff establishes that a misleading statement or omission affected the price of stock, the plaintiff may recover damages without establishing knowledge or reliance on the delict. 814 F.2d 1169, 1179–80 (7th Cir.1987), *cert. denied,* 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987). *See also Affiliated Ute Citizens v. United States,* 406 U.S. 128, 152–54, 92 S.Ct. 1456, 1471–72, 31 L.Ed.2d 741 (1972), *reh'g. denied,* 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 (1972), *and reh'g. denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972). This court finds that the plaintiffs in the instant case have pled fraud on the market. The plaintiffs alleged the date and price at which each named plaintiff purchased the Centel stock (Second Amended Complaint

¶¶ 14–23). Plaintiffs pled the purported misleading statements by the defendants (Id. ¶¶ 47, 54–60, 65–68, 70, 73–77, 81–83, 87). Plaintiffs alleged artificial inflation in the value of the stock due to the series of purported misstatements (Id. ¶¶ 8–9, 28–31). Finally, plaintiffs alleged that when the market learned of the proposed merger between Centel and Sprint at a disappointing per share price the market corrected for the alleged artificial overvaluation in stock price (Id. ¶¶ 11, 91, 102).

## B. The Measure of Damages for Fraud on the Market

In the Motion to Dismiss, the defendants argue that there was no fraud on the market because the plaintiffs suffered no injury. Defendants contend that since the actual value of the stock on the day the merger officially closed ($42.30/share on March 8, 1993) was substantially higher than the estimated value of the stock on the day the proposed merger was announced ($33.57/share on January 23, 1992) and also higher than the value of the stock the day before the Class Period began ($37/share on January 22, 1992) the plaintiffs suffered no injury. Plaintiffs alleged that the damage they incurred was due to the artificial level of stock prices at the time they purchased the shares (Second Amended Complaint ¶ 13).

■ The Seventh Circuit has established the measure of damages for fraud on the market. The Court of Appeals in *Flamm* held that damages for fraud on the market are measured by "the difference between the actual price and the price the market would have reached if traders had been fully informed." 814 F.2d at 1179–80. In a subsequent securities fraud case, the Seventh Circuit elaborated on the principle enunciated in *Flamm* regarding the measure of damages for a violation of Section 10(b) of the Act and Rule 10b–5 in *Goldberg v. Household Bank, F.S.B.,* 890 F.2d 965 (7th Cir.1989). In *Goldberg,* Judge Easterbrook wrote that when "markets are liquid and respond quickly to news, the drop when the truth appears is a good measure of the value of the information, making it the appropriate measure of damages." *Id.* at 966–67 (empha-

sis added). According to this analysis, the immediate price change in the value of the stock once the truth is revealed is a measure of a stockholder's damages due to a material omission or misstatement.

■ *Goldberg* involved a plaintiff who sued a stock issuer for statements that artificially inflated the price of the stock that he bought. The plaintiff sought damages based upon the drop in price of the stock on the day the defendant disclosed the prior misstatements. In *Goldberg,* the defendant argued that since the price of the stock after the revelation was equivalent to the price paid for the stock, there was no injury. *Id.* at 966. The Seventh Circuit rejected the defendant's argument and affirmed the plaintiff's theory of damages. Nonetheless, the Court of Appeals held that the plaintiff was not entitled to recovery because he had failed to prove an intentional or reckless misstatement of a material fact.

The Seventh Circuit reaffirmed the *Goldberg* principle in *Rand v. Monsanto Co,* 926 F.2d 596 (7th Cir.1991), 946 F.2d 897 (7th Cir.1991). In *Rand,* the Court of Appeals held that an increase in stock value subsequent to fraudulent concealment of material information does not disqualify the stockholder from recovering for any loss attributable to the concealment that the defendant had a duty to disclose. *Id.* at 597.

More recently, the Seventh Circuit discussed the measure of damages pursuant to the Securities Exchange Act of 1934 in *Pommer v. Medtest Corp.,* 961 F.2d 620 (7th Cir.1992) and *Associated Randall Bank v. Griffin, Kubik, Stephens & Thompson, Inc.,* 3 F.3d 208 (7th Cir.1993). In each case the Court of Appeals held that damages under § 10(b) "usually are the difference between the price of the stock and its value on the date of the transaction if the full truth were known." 961 F.2d at 628; *see also* 3 F.3d at 214.

The stock market is an auction market. Robert G. Harris and Thomas M. Jorde, *Antitrust Market Definition: An Integrated Approach,* 72 Cal.L.Rev. 3, 22 (1984). The value of stock is determined in auction markets by the price at which a willing buyer

and seller agree to trade. In the case of mergers, the actual merger and any resulting stock trade may occur weeks or even months after parties agree to merge; in the interim the acquired company's stock price may fluctuate for a variety of reasons. The announcement of a merger agreement publicly sets the valuation that the willing buyer and seller place upon a company's stock. In fraud on the market cases in a merger context, the truth hits the market when the parties disclose publicly the true value they place on the company to be acquired despite earlier claims to the contrary.

In this case, the plaintiffs alleged that the truth hit the market when Centel announced the merger agreement at a price far below the $65/share value touted earlier by the defendants. The fact that the final price at which the merger occurred almost one year later was higher than the price originally announced was fortuitous. *See Monsanto Co.*, 926 F.2d at 597. The problem with relying on the actual closing price for the merger as a measure of damages is that the closing price may reflect market fluctuations that have nothing to do with the alleged fraud that may have occurred much earlier in time.

If the plaintiffs succeed on their claims, they are entitled to prove damages. Investors who purchased securities at allegedly inflated prices are eligible to recover damages for fraud on the market measured in at least one of two ways. First, damages equal the difference between the stock's purchase price and its true value. *Associated Randall Bank*, 3 F.3d at 214. Second, damages equal the drop in the market price when the truth appears. *Goldberg*, 890 F.2d at 965.

### C. Material Misstatements

█ The plaintiffs claim that the defendants made false and misleading statements about Centel in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t(a), as well as Rule 10b–5, 17 C.F.R. § 240.10b–5. Securities laws encourage firms to make public predictions of future performance to aid in the market's assessment of the firm's future value. *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir.1993). In *Arazie*, the Seventh Circuit held that forward-looking statements, including statements of management's plans for future operations and management's assessment of the firm's financial condition, are protected so long as the predictions have a reasonable basis in fact; poor predictions do not automatically subject a company to suits under securities laws. *Id.* at 1466. *See also Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 513–514 (7th Cir.1989). Like predictions, statements of opinion and belief made by corporations are actionable if they are made without a reasonable basis. *See e.g., Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 111 S.Ct. 2749, 2758, 115 L.Ed.2d 929 (1991); *see also Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1132 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994).

█ The Second Amended Complaint alleges material misstatements on the part of the defendants. When looking at the alleged misstatements in context, this court finds that the plaintiffs have pled sufficient facts to survive a motion to dismiss as to at least one statement. Mr. White, Centel's spokesman, allegedly reported on March 26, 1992 that the bidding process was going "very smoothly." By then the market was aware of PacTel's and Ameritech's limited interest in certain Centel properties (Second Amended Complaint ¶ 63e, 69) and GTE's withdrawal from the bidding process (*Id.* ¶ 69). A reasonable investor could have understood Mr. White's statement to mean the following: despite the bad news about PacTel, Ameritech and GTE, the other targeted bidders demonstrated significant interest in Centel to indicate that the auction was progressing smoothly. For Centel to meet its goal of maximizing shareholder value while minimizing the tax burden, plaintiffs claim that Centel needed the targeted companies to bid aggressively against each other for the purchase of the entire company rather than for parts of the company. (*Id.* ¶ 70–71).

The amended pleadings detail the progress of the bidding process as well as the lukewarm interest by the eight targeted bidders during the auction period. (Second Amended Complaint ¶¶ 63(a)-(h), 69, 72(a)-(c), 79,

80). Plaintiffs allege that at the time of White's statement, the bidding was far from smooth. As of the date of Mr. White's statement, GTE, Bell Atlantic and Southwestern Bell had indicated that they would not bid for all of Centel; NYNEX and BellSouth had demonstrated weak interest; PacTel, Ameritech and U.S. West had expressed interest only in limited Centel properties. (*Id.* ¶ 63(a)-(h), 69). Centel's positive statement at a time when the targeted bidders expressed weak interest supports an inference that the defendants' favorable opinion was without basis in fact.

### D. Scienter

■ To establish a valid claim under § 10(b) of the Securities Exchange Act of 1934 or Rule 10b–5 a plaintiff must allege that the defendant acted with the intent to deceive, manipulate or defraud. *See Ernst & Ernst,* 425 U.S. at 193, 96 S.Ct. at 1380–81. The Seventh Circuit expanded the scienter requirement for a claim pursuant to § 10b or Rule 10b–5 to include reckless disregard for the truth. *Rowe v. Maremont Corp.,* 850 F.2d 1226, 1238 (7th Cir.1988) (*citing Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1043–45 (7th Cir.1977), *cert. denied, Meers v. Sundstrand Corp.,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977)).

### 1. Motive

■ The defendants argue that the pleadings fail to allege a rational theory of scienter. The Second Amended Complaint alleges two distinct theories of motive to deceive, manipulate or defraud: (1) the defendants drove up the value of Centel stock to protect their lucrative positions with the company (Second Amended Complaint ¶ 100); and (2) the defendants artificially inflated the market price of Centel stock to gain leverage in their negotiations with potential bidders (*Id.* ¶¶ 46, 50, 96). The defendants argue that plaintiffs' theories of scienter rest on contradictory and conclusory allegations which fail to prove motive.

The defendants persuasively highlight the flaw in the plaintiffs' first theory. If the defendants wanted to protect their lucrative positions with Centel, then they would not

have sold the company, thereby, putting their jobs in jeopardy. Incidentally, plaintiffs' appear to have abandoned the first theory since their brief discusses only the "leverage theory" as support for the motive requirement (Plaintiffs' Brief at 32–33).

The defendants make a strong argument in the reply brief that the pleadings fail to support the plaintiffs' "leverage theory" as well. Plaintiffs allege in their complaint that the defendants inflated the share price of Centel to gain leverage in negotiations with potential bidders. (Second Amended Complaint ¶ 96). This type of conclusory statement does not meet the standard of Rule 9(b), which requires pleadings with particularity concerning any circumstances constituting fraud. The Second Amended Complaint fails to indicate how inflated prices would give Centel leverage over the bidders and what each defendant would derive from the alleged scheme.

### 2. Recklessness

■ Although the pleadings fail adequately to allege motive, the plaintiffs do allege, in satisfaction of the scienter requirement, that the defendants recklessly failed to disclose material information. Under the recklessness standard established by this Circuit, "the danger of misleading buyers must be actually known or so obvious that any reasonable man would be legally bound as knowing, and the omission must derive from something more egregious than even 'white heart/empty head' good faith." *Sundstrand Corp.,* 553 F.2d at 1045.

■ In the instant case, the defendants argue that they were under no duty to disclose information about the progress of the auction because much of the "negative information" was already public and that information which remained private would not render misleading the defendants' prior statements. (Reply Br. at 15). The Second Circuit held in *Time Warner* that a duty to disclose arises whenever private material facts render prior public statements substantially misleading, and not just when that information fully negates the public statements. *In Re: Time Warner Inc. Securities Litigation,* 9 F.3d 259, 268 (2nd Cir.1993),

*cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1974). "[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." *Id.* at 267.

The United States Supreme Court examined in *Basic Inc. v. Levinson* whether information concerning the existence and status of preliminary merger discussions constitutes material information and requires disclosure. 485 U.S. at 235, 108 S.Ct. at 985. The Supreme Court held that "materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information." 485 U.S. at 240, 108 S.Ct. at 988. The Supreme Court in *Basic Inc.* concluded that materiality is a factual inquiry to be determined on a case-by-case basis. *Id.* at 239–40, 108 S.Ct. at 987–88.

■■■ The plaintiffs have pled sufficient facts to survive a motion to dismiss as to the defendants' alleged recklessness in failing to correct the alleged misimpression left by the Centel spokesman's March 26, 1992 statement. Mr. White of Centel stated on March 26, 1992 that the bidding process was progressing "very smoothly" (Second Amended Complaint ¶ 77). As discussed earlier in this opinion, plaintiffs alleged sufficient facts to suggest that White's statement may have been misleading when it was made. Since White's statement, Centel learned that two more of the targeted bidders were unlikely to bid on the entire company. BellSouth informed one of Centel's investment bankers on March 27, 1992 that BellSouth was unlikely to submit a competitive bid on "a large group of assets." (*Id.* ¶ 79). U.S. West privately informed Centel that it would not submit a cash bid on April 8, 1992. (*Id.* ¶ 80). By then, the defendants were aware that six (Ameritech, U.S. West, PacTel, GTE, Bell Atlantic and Southwestern Bell) of the eight originally targeted bidders would not bid for the entire company. (*Id.* ¶¶ 63c, 63f, 69, 77). Of the remaining two targeted companies, NYNEX earlier had expressed privately a "lack of enthusiasm" for a transaction (*Id.* ¶ 63a); and, subsequently, BellSouth indicated that bidding on limited Centel properties was problematic. (*Id.* ¶ 79). These facts could suggest that the defendants were aware that Centel's stock was worth significantly less than the value the defendants had touted to the market. A jury could find these undisclosed facts material that the defendants had a duty to disclose this information.

**E. Reliance**

■■■ Defendants aver that the pleadings fail to allege with specificity actual reliance on the purported misstatements as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that all averments to fraud must be alleged with particularity. Defendants argue that plaintiffs' pleadings are facially deficient because they allege the plaintiffs' reliance upon misstatements rather than upon the integrity of the market and they allege reliance in conclusory terms. The plaintiffs respond by arguing that when fraud on the market is alleged, reliance is presumed.

The United States Supreme Court has long held that reliance is an element of a Rule 10(b)–5 cause of action. *Basic Inc.*, 485 U.S. at 243, 108 S.Ct. at 989. The Supreme Court held that "[r]eliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury" but there is more than one way to demonstrate this link. *Id.* The Supreme Court in *Affiliated Ute Citizens v. United States* relaxed the reliance requirement in nondisclosure cases. 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), *reh'g. denied,* 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 (1972), *and reh'g. denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972). The Supreme Court held there that positive proof of actual reliance is not necessary for recovery when a defendant fails to abide by its obligation to disclose material facts which a reasonable investor would have considered in making a decision. *Id.* at 153–54, 92 S.Ct. at 1472. In *Basic Inc.,* the Supreme Court held that reliance may be presumed in Rule 10b–5 litigation because in well developed markets, the market price reflects publicly available information. 485 U.S. at 246–47, 108 S.Ct. at 991–92. The Supreme Court also held that a defendant may rebut this presumption at trial with a showing that severs the link between the alleged misrepresentation and

the stock price paid or received by the plaintiff or plaintiff's decision to trade at a fair market price. *Id.* at 248, 108 S.Ct. at 992, *see also* n. 29.

The plaintiffs allege that the defendants knowingly or recklessly misled them as to the progress of the auction. (Second Amended Complaint ¶¶ 95–103) The Second Amended Complaint contrasts the negative information about which the defendants were aware with the optimistic public statements that the defendants made to prospective bidders. (*Id.* ¶¶ 63, 69, 71–72, 78–80, 84–86, 88–89). As discussed earlier in this opinion, a jury could find material the facts that the defendants failed to disclose. Since the plaintiffs have pled fraud on the market, then reliance may be presumed, subject to rebuttal at trial.

### CONCLUSION

Since this court finds that the plaintiffs state a claim under federal securities laws as to Count I, this court has supplemental jurisdiction to entertain Count II, the common law fraud claim, pursuant to 28 U.S.C. § 1367. For these reasons, this court denies the defendants' motion to dismiss.