**Gary D. SWANK, Plaintiff–Appellant,**

v.

**James SMART, Individually and as City Marshal, City of Carthage, Illinois, James R. Nightingale, Individually and as Mayor of the City of Carthage and as a member of the Public Safety Committee of the City Council of Carthage, Illinois, William Tomlinson, Individually and as a member of the Public Safety Committee of the City Council of Carthage, Illinois, et al., Defendants–Appellees.**

No. 92–2998.

United States Court of Appeals, Seventh Circuit.

Argued May 6, 1993.

Decided July 19, 1993.

John H. Bisbee (argued), Macomb, IL, for plaintiff-appellant.

Stephen D. Gay, Jeffrey A. Ryva, Husch & Eppenberger, Mary W. McDade (argued), Julie A. Ward, Quinn, Johnston, Henderson & Pretorius, Peoria, IL, for defendants-appellees.

Before POSNER, FLAUM, and RIPPLE, Circuit Judges.

PER CURIAM.

Gary Swank appeals from an unfavorable jury verdict. Briefly, the relevant facts are as follows.[1] In 1986, Swank, who is married, worked as a Carthage police officer, on probation for rule infractions. While off-duty, he gave a young, female college student an after-midnight joyride on the back of his motorcycle. Another officer observed the encounter and reported it to the police chief, James Smart. Swank lied about the incident when confronted by Smart, who decided to discuss it with the mayor, James Nightingale. They agreed that Smart should bring the matter before the Public Safety Committee. After drawing up a list of charges, writing a short memorandum about them, and obtaining a statement from the college student, Smart appeared at the Committee meeting. He spoke to the chairman of the Committee, William Tomlinson, and confirmed the time at which the motorcycle ride occurred. Tomlinson indicated that he did not want to know the "gory details." Meanwhile, Swank, who had been informed about the meeting, had consulted with a lawyer.

The Public Safety Committee met, with Swank and Smart present. Smart read the charges and Swank admitted some and denied others. Then everyone read Smart's argument or memorandum on the deleterious effect Swank's action might have on the police department relations with the local college. Tomlinson asked Swank if he had anything to say and Swank did not. At that point, Swank and Smart were both excused; the Committee met and voted unanimously to suspend Swank with pay and to recommend his termination to the City Council. Swank and Smart were readmitted to the meeting and told of the Committee's decision. Swank asked for a hearing. Nightingale offered him a hearing at which he could be represented by a lawyer. One Committee mem-

---

1. For a more detailed description of the background facts, see *Swank v. Smart*, 898 F.2d 1247 (7th Cir.1990).

ber opined that Swank had already had a hearing, in the Public Safety Committee meeting that had just taken place. Swank apparently agreed with that assessment. Later that month, the City Council met and, after hearing the Committee's recommendation, voted four to three to terminate Swank for conduct unbecoming a police officer. Swank sued, alleging a violation of due process. In particular, he claimed that he did not waive his right to a post-termination hearing.

■ On appeal, Swank argues that the district judge incorrectly applied our first decision in this matter, *Swank v. Smart*, 898 F.2d 1247 (7th Cir.1990) ("*Swank I*"). He particularly objects to the district court reopening the issue of what occurred during the Public Safety Committee meeting, arguing that the law of the case theory should have foreclosed that issue at trial. Our previous decision was based on a summary judgment record, not a full trial record. *Swank I* assumed that Swank never saw the argument section of Smart's memorandum. Uncontroverted evidence at trial clarified the factual record, showing that Swank had read Smart's memorandum, had a chance to respond to it during the Public Safety Committee meeting, and opted not to take that opportunity. It was entirely appropriate for the district judge to allow this key fact to be elucidated at the trial.

■ Swank's remaining arguments are equally unavailing. He argues that the district court botched the instructions on waiver and improperly interrupted his closing argument to reiterate the erroneous standard. We find no error in the waiver instructions. The jury had appropriate information about what constitutes an effective waiver. Because presumptions are not evidence and can be confusing to a jury, a district court does not give instructions about presumptions; it instructs the jury on which party bears the burden of persuasion on an issue and that is sufficient. We also find no error in the interruption of closing argument. The district court attempted to correct counsel's erroneous argument to the jury, that a valid offer for a hearing had to include specific mention of the student's statement, outside the presence of the jury; only when counsel misstated the same point again did the district court interrupt and instruct the jury.

Swank concedes that there was sufficient evidence to support the jury's verdict that he waived his right to a post-termination hearing. He argues only that the verdict was based on erroneous instructions by the court. Having found the instructions proper, we look no further. We do note, however, that in *Swank I*, we described the factual dispute surrounding the waiver issue: The defendants claimed to have offered to arrange a hearing with counsel present after Swank's request, but one suggested that the meeting had been a hearing, to which Swank agreed and added that he was not going to sue anyway. Swank claimed that, after he requested a hearing, Tomlinson told him that he had had his hearing already. We characterized the defendants' version of this exchange as waiver and the plaintiff's as no opportunity for a further hearing. This key credibility decision stood in the way of our grant of summary judgment on liability. *Swank I*, 898 F.2d at 1256. Now the jury has spoken, crediting the defendants' version and finding waiver. If there is an argument for applying the law of the case theory to this case, it would favor the defendants.

■ In addition, Swank argues that the court should have granted his motion in limine concerning the student's statement. Swank wanted to introduce those portions he considered helpful, with the unfavorable parts redacted. The statement includes a specific denial that any sexual misconduct took place during the ride, and Swank wanted to offer that as proof of what Smart knew when he appeared at the meeting. The portions he sought to exclude, however, are also relevant to what Smart knew as he pursued Swank's termination: The student felt misled about Swank's marital status, and she was generally disaffected by the experience. At any rate, the woman testified at trial as Swank's witness. Both sides had ample opportunity to review her statement with her and clarify her remarks to Smart. Moreover, Swank did not renew his motion, with an explanation or argument about the possible prejudicial effect, at the time the statement was admitted. The district court did not abuse its discretion in denying Swank's motion in limine.

Lastly, Swank takes issue with the district court's interpretation of the law on occupational liberty claims, specifically whether the plaintiff must prove exclusion from, or merely impairment in his ability to find work in, his chosen occupation. There was no error in the district court's instruction that the plaintiff had to show exclusion. While we used the word "impair" once in *Swank I*, we also reiterated the law of the circuit, that a claim of loss of occupational liberty must be supported by proof of exclusion or foreclosure from the chosen field. 898 F.2d at 1257 ("If Swank was fired on a ground likely to exclude him ...;" "his damages will be greater if he can show that as a result of being fired for conduct unbecoming a police officer he has been excluded from his chosen occupation;" "the effect will be to exclude him from police work....."); *see also Munson v. Friske,* 754 F.2d 683, 693 (7th Cir.1985). Besides, Swank admitted that he had been placed on the hiring lists of two of the three police departments to which he made employment inquiries. With that evidence, he would have had a difficult time showing that his occupational liberty had been substantially impaired by his discharge, much less foreclosed.

For these reasons, we AFFIRM the judgment of the district court.