Lynne A. SCHWARTZ, Plaintiff–Appellant,

v.

SYSTEM SOFTWARE ASSOCIATES, INC., Roger E. Covey, and David L. Harbert, Defendants–Appellees.

No. 93–2904.

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1994.

Decided Aug. 10, 1994.

See also 813 F.Supp. 1364.

Ronald L. Futterman, Futterman & Howard, Chicago, IL, I. Stephen Rabin (argued), Joseph P. Garland, Rabin & Garland, New York City, for plaintiff-appellant.

Lowell E. Sachnoff (argued), Gary S. Caplan, Joel S. Feldman, Christine Bodewes, Sachnoff & Weaver, Chicago, IL, for defendants-appellees.

Before CUMMINGS, EASTERBROOK and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

On February 22, 1991, plaintiff Lynne A. Schwartz filed this lawsuit under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b–5 of the Securities and Exchange Commission (17 C.F.R. § 240.10b–5) against defendant System Software Associates, Inc. ("System Software") and two of its officers. The suit is a class action on behalf of purchasers of System Software's common stock during the period from January 14 through February 19, 1991.

The lawsuit arises from a January 14, 1991, statement by defendant David L. Harbert, chief financial officer of System Software, countering a negative analyst report. The Harbert statement purportedly caused plaintiff, the class representative, to purchase 50 shares of System Software's common stock for $26.3125 per share on January 15, 1991. The complaint stated that the negative report was accurate and Harbert's statements were false, and that when the truth was revealed on February 19, 1991 stock prices plummeted. The plaintiff sought unascertained damages for herself and other members of the class as well as attorney's fees and punitive damages. Subsequently, damages of $21.4 million were claimed (Tr. 351–352).

The complaint alleged in three counts that Harbert's statements amounted to manipulative or deceptive devices or contrivances in violation of Section 10(b) of the Securities Exchange Act (15 U.S.C. § 78j(b)) and SEC Rule 10b–5 promulgated pursuant thereto, that these statements also amounted to common law fraud, and that Covey and Harbert were "control persons" within the meaning of Section 20(a) of the Act (15 U.S.C. § 78t(a)). It recited that the district court had jurisdiction under 15 U.S.C. § 78aa.

In July 1991 the district court determined that the lawsuit would be entertained as a class action on behalf of all persons who purchased common stock of System Software from January 14, 1991, through February 19, 1991. Consequently, it certified the litigation as a class action, and on July 18, 1991 approved a notice to be sent to the class. Thereafter the defendants filed a motion for summary judgment supported by a statement of material facts as to which there was no genuine issue. After briefing by the parties, the court denied the defendants' motion for summary judgment on the federal securities law claims but granted summary judgment on the negligent misrepresentation claim and simultaneously dismissed plaintiff's common law fraud claim. The trial commenced in June 1993 and on July 2, 1993, the jury found in favor of defendants. Plaintiff appeals, alleging numerous errors in the conduct of the trial.

We review the manner in which a district judge conducts a trial for abuse of discretion. *Crown Life Insurance Co. v. Craig*, 995 F.2d 1376, 1384 (7th Cir.1993). Because the trial judge did not abuse his discretion in the conduct of this trial, judgment in favor of the defendants is affirmed.

*Facts*

Plaintiff Lynne A. Schwartz, the class representative, purchased System Software's stock on January 15, 1991. On February 19, 1991, the price of the stock dropped ten points. Thereupon Mrs. Schwartz filed this lawsuit claiming that she and the class she represented were defrauded by a so-called "comfort" statement made on January 14, 1991 by David Harbert, System Software's chief financial officer.

In January 1991 Wall Street estimates of System Software's fiscal year earnings ranged from $1.70 to $2.00 per share, with estimates for first quarter (the fiscal quarter ending on January 31, 1991) earnings ranging from 31 to 40 cents per share. On January 14, 1991 securities analyst Scott Smith downgraded his rating of System Software's common stock from "neutral" to "unattractive." On that same day Harbert received a phone call from a Dow Jones report-

er to ask about the resulting decline in the price of System Software's common stock. Harbert said that he was comfortable with the middle of the Wall Street range of estimates regarding System Software's fiscal 1991 earnings per share, identifying the middle of the range as $1.85 to $1.90 per share. He made no prediction regarding System Software's first quarter earnings.

On February 19, 1991, System Software reported first quarter earnings of 31 cents per share. This was 6 cents per share greater than first quarter earnings for the previous year. However, the 31 cents figure included a 9-cents-per-share non-recurring item attributable to a change in the company's commission structure so that System Software actually earned only 22 cents per share for the quarter, well below the range of January estimates. As a result of this unfavorable quarterly earning the price of System Software's common stock dropped 10 points.

Three days later this lawsuit was brought on behalf of purchasers of System Software's stock at allegedly inflated prices during the January 14 through February 19 period. According to the plaintiff, Harbert was untruthful when he told the Dow Jones on January 14 that he was unaware of any internal reason for a decline in the company's common stock and added that the company was "comfortable with the middle of the [Wall] Street range of fiscal 1991 earnings estimates" at about $1.85 to $1.90 per share. Plaintiff relies primarily on three documents prepared by System Software's president and chairman Roger E. Covey prior to Harbert's January 14 comfort statement, all of which projected first quarter earnings of well below 34 cents per share. She argues that these documents demonstrate that Harbert knew on January 14 that System Software was not doing as well as analysts were predicting. Defendants, however, characterize these three internal documents as "what if" scenarios designed to predict the effect on System Software's stock of certain unlikely eventualities. They note, first, that in addition to these documents Covey also prepared genuine internal forecasts predicting 34 (later revised to 35) cents-per-share first quarter

earnings, and second, that even the "what if" scenarios predicted year-end total earnings per share of $2.35, well above any analyst's estimate.

Defendants attribute the low first quarter earnings to the unexpected loss of two major deals (sales transactions with Diversey Corp. and with Alcon Laboratories, Inc.) that they had expected to close prior to January 31. One of these sales transactions did not take place until the second quarter of 1991, and the other did not take place at all.

### Evidence at Trial

Plaintiff argued at trial that the internal computer printouts of December 10, December 20, and January 2 were true forecasts rather than worst case simulations. Accordingly, she argued that Harbert's January 14 statement that he was unaware of any bad news was fraudulent because each of these pessimistic three documents had been labeled "forecast" and was not meant to be only a worst case simulation as System Software contended.

System Software introduced evidence that the three printouts were worst case "what if" simulations that were prepared quarterly by Mr. Covey. He testified that these simulations were to determine what the earnings per share would be if all sorts of bad news would happen. He also stated that these "what if" simulations were incorrectly labeled forecasts because he used the same computer program to compile the "what if" simulations as he did to forecast earnings. He said too that the "what if" simulations differed from true forecasts.

Other trial witnesses corroborated Covey's testimony that the computer printouts were "what if" simulations rather than true forecasts. For example, there was testimony that field documents of System Software salespersons used by Covey to predict sales and revenue were not made available to him until after the December 10, 20, and January 2 simulations were generated.

Charles Cox, an expert witness from Lexecon Inc., described his qualifications and testified for the defense. He stated that the January 2 simulation contained internally in-

consistent information. It resulted in first quarter earnings of 25 cents per share, below analysts' estimates, but also resulted in yearly earnings of $2.35 per share, well above the analysts' estimates. He further testified that if all of Convey's simulations had been disclosed, the market would have been "very confused."

Cox also testified that if the January 2 simulation had been disclosed to the public, the stock price of System Software would have increased due to the high yearly earning prediction, so that the failure to disclose it did not damage plaintiff.

Securities analyst Christopher Mortenson stated that if System Software had published Covey's "what if" simulations, management's credibility would have been seriously questioned because it would look as if management had no idea of what was going on in its business.

Harbert testified to the effect that he had a reasonable basis to make his January 14 statement to Dow Jones, that he believed it, and that it was made in good faith. The jury obviously agreed after deliberating for two hours. Harbert also testified that his January 14 statement to Dow Jones that he was unaware of any internal reason for the decline in the price of System Software common stock was based in part on Covey's January 3 remarks to securities analyst Mortenson that he was comfortable with Wall Street estimates in the low 30s for the first quarter.

All of System Software's internal documents prior to Harbert's January 14 statement showed $2.35 per share year-end earnings, higher than the $1.85–$1.90 mid-range of analysts' estimates which Harbert told the Dow Jones reporter he was comfortable with. The company's budget number, a goal set by the board of directors, was $2.55 per share, well above analysts' estimates. The number that management promised the board of directors and felt the company was to earn at year-end, was $2.15.

## Analysis

Plaintiff alleges four trial errors that she claims fatally infected the proceedings: Im-

proper conduct by the judge during her counsel's opening argument, improper restriction on the scope of cross-examination and on the introduction of deposition testimony, improper conduct by the judge during closing argument, and improper jury instructions.

### Opening Argument

■ Plaintiff's attorney attempted to argue the applicable law in his opening statement. He told the jury that under the federal securities law the defendants were required to "tell the truth, the whole truth, and nothing but the truth." Since it was the province of the district court to pass upon the law, *United States v. Wables,* 731 F.2d 440, 449 (7th Cir.1984), it was entitled to tell plaintiff's counsel to refrain from legal argument in his opening statement. *United States v. Dinitz,* 424 U.S. 600, 612, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267 (Burger, C.J., concurring).

Moreover, counsel's summary of the law was wrong. Under SEC Rule 10b–5 a company is required to speak truthfully about *material* information. *Ackerman v. Schwartz,* 947 F.2d 841, 846 (7th Cir.1991). Plaintiff had to show that the false statement "significantly affected the total mix of information available to the market." *Roots Partnership v. Lands' End, Inc.,* 965 F.2d 1411, 1420 (7th Cir.1992) (citations and internal quotation marks omitted). In these circumstances Judge Duff properly instructed the jury that counsel should not argue what he believed to be the applicable law. There was no abuse by the trial court in straightening out the matter with the jury.

■ There were other instances on which plaintiff's counsel again started to argue the law in his opening statement. In view of the admonition given the plaintiff, it was permissible for the district court to interrupt those arguments even when defendants did not object. *Swank v. Smart,* 999 F.2d 263, 265 (7th Cir.1993). Therefore, there was no error in the judge's conduct during opening argument.

## Exclusion of Irrelevant Evidence

■ Defendants produced Charles Cox, an economist at Lexecon Inc., and former commissioner of the SEC, as an expert witness. Although he never testified that he was the champion of the "small investor," plaintiff's counsel tried to show that when Mr. Cox was an SEC commissioner, the Commission passed a rule diluting the votes of small investors. The district judge properly refused to permit plaintiff's counsel to cross-examine Mr. Cox about an irrelevant SEC rule.

■ Counsel for plaintiff also attempted to discredit Mr. Cox because of his company's involvement in a case involving the Lincoln Savings Bank. Because Mr. Cox did not join his company until well after its consulting work for Lincoln Savings Bank was completed, the district court properly sustained an objection to this line of questioning. In addition, even if Mr. Cox had been associated with Lexecon Inc. during that period, if Cox himself had had nothing personally to do with the consultation plaintiff still could not demonstrate the relevance of this inquiry.

■ Moreover, the district court refused to allow into evidence testimony of Merrill Barden of Alcon, a potential buyer of defendant's software. Plaintiff's counsel sought to introduce a few questions from a 43-page deposition transcript of Mr. Barden. The judge ruled that admission of selected questions from the deposition would be improper because the questions lacked evidentiary quality and because no attempt was made to bring Mr. Barden to testify at trial. There was no satisfactory showing of Mr. Barden's unavailability, so that Rule 32(a)(3) of the Federal Rules of Civil Procedure was not satisfied. The ruling was therefore sustainable.

■ The district court also held that the following excerpt from the deposition transcript of Scott Smith was inadmissible:

Q: Why is that?
A: Because the company wasn't returning phone calls, wasn't being very responsible.

The court concluded that the deposition excerpt was irrelevant because it had "nothing to do with whether there was a securities fraud" by defendants. As defendants have persuasively argued, whether or not defendants were returning Smith's phone calls has nothing to do with their knowledge of their disclosure duties.

## District Court's Treatment of Plaintiff's Closing Argument

■ In his closing rebuttal, plaintiff's counsel exhibited a 50-page document to the jury but miscited one of its enclosures. The district court permitted opposing counsel to correct the miscitation and reminded the jury that statements of attorneys are not evidence. This was not error. The court had the discretion to allow defendants the brief surrebuttal (which took less than one minute), *Moylan v. Meadow Club, Inc.*, 979 F.2d 1246, 1251 (7th Cir.1992), and to caution the jury.

## Jury Instructions and Special Interrogatories

■ Jury Instruction No. 24 provided:

If you find there was a reasonable basis for David Harbert's January 14, 1991 statement and that the statement was made in good faith, then there is no liability and you need not consider the question of damages.

The jury found for the defendants on this issue. Special Interrogatory No. 1 asked:

Do you find that there was a reasonable basis for David Harbert's January 14, 1991 statement and that he acted in good faith? If you answer yes, you need proceed no further....

The jury answered "yes" to this special interrogatory, did not address the other special interrogatories, and returned a general verdict in favor of the defendants. Judgment accordingly was entered for defendants.

Because plaintiff's theory in this case was that Harbert's January 14 statement was a projection of future earnings, the instruction and interrogatory were proper.* Special In-

---

* Plaintiff's theory is that Harbert's January 14     statement (that he was "comfortable with" ana-

terrogatory No. 1 was in accord with this Court's "reasonable basis" standard applicable to forward-looking statements. See *Eckstein v. Balcor Film Investors*, 8 F.3d 1121 (7th Cir.1993), certiorari denied, —— U.S. ——, 114 S.Ct. 883, 127 L.Ed.2d 78; *Arazie v. Mullane*, 2 F.3d 1456 (7th Cir.1993); *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411 (7th Cir.1992); *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509 (7th Cir. 1989). Under these cases, plaintiff would have to show that Harbert lacked a reasonable basis for the statement at the time he made it. The evidence shows that Harbert's statement was reasonable and made in good faith.

Instruction No. 25 provided:

You may not find System Software or Harbert liable unless the plaintiffs have proved by a preponderance of the evidence that Harbert himself did not believe the contents of the January 14, 1991 statement.

Special Interrogatory No. 3 asked, in accordance with this instruction:

Do you find that David Harbert believed his January 14, 1991 statement? If you answer yes, you need proceed no further.

Plaintiff objects to Instruction No. 25. Because the jury obviously did not reach any issues addressed by this instruction, as evidenced by its responding only to Special Interrogatory No. 1 and to none of the others, we need not consider whether this instruction properly stated the law under *Virginia Bankshares Inc. v. Sandberg*, 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991).

*Defendants' "Integrity of the Market" Theory*

In their brief and at oral argument defendants offered as an additional argument that plaintiff failed to establish that she relied on the integrity of the price set by the market, relying on *Basic Inc. v. Levinson*, 485 U.S.

224, 243, 108 S.Ct. 978, 989–90, 99 L.Ed.2d 194 (1988). However, in view of *Eckstein v. Balcor Film Investors*, 8 F.3d 1121 (7th Cir. 1993), certiorari denied, —— U.S. ——, 114 S.Ct. 883, 127 L.Ed.2d 78, the argument was no longer pursued by defendants and need not be discussed.

*Conclusion*

Because the district court did not abuse its discretion in its handling of the trial, the judgment in favor of the defendants is affirmed.

---

lysts' estimates of System Software's future performance) itself constituted a prediction of System Software's future earnings, but that the prediction improperly took no account of the unfavorable "forecasts" previously generated by Covey. Plaintiff does not argue that Harbert's statement constituted an assertion regarding the content of the company's internal estimates. For this reason, the quoted instruction was correct.

By contrast, if Harbert falsely told the Dow Jones that System Software's internal projections themselves indicated an earnings range of 31 to 40 cents per share for the first quarter, it would of course avail him nothing to argue that, had he been predicting the future rather than lying about the present, such a prediction would have had a reasonable basis.