I. Peter POLANSKY, custodian for Meg
and Jane Polansky, Plaintiff,

v.

PAINEWEBBER INCORPORATED, a
corporation, and Ronald Levi,
Defendants.

No. 90 C 6618.

United States District Court,
N.D. Illinois, E.D.

March 14, 1991.

Gerald G. Saltarelli, Bruce William Melton, Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, Chicago, Ill., for plaintiffs.

Michael B. Roche and L. Andrew Brehm, SR & Z, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Peter Polansky filed this three count complaint against PaineWebber Inc. ("PaineWebber") and one of its employees, Ronald Levi, alleging violations of the Securities and Exchange Commission Rule 10b–5 ("Rule 10b–5"), 17 C.F.R. § 240.10b–5, common law fraud and breach of fiduciary duty.[1] The complaint was filed on November 13, 1990 and alleged that the defendants, who were responsible for the plaintiff's brokerage accounts, misrepresented the risk involved in his purchase of Lomas Financial Inc. Liquid Yield Notes ("Lomas"). In addition, the defendants allegedly failed to inform the plaintiff that the safety of the notes had materially decreased due to changes in market conditions. As a result, the notes became virtually worthless.

Ronald Levi was the account executive responsible for the plaintiff's brokerage accounts. Levi did not have the discretion to make trades without the approval of the plaintiff. The plaintiff alleges that he is an unsophisticated investor and totally relied on Levi's investment advice. He also alleges that Levi was aware of the fact that preservation of capital was the plaintiff's highest priority.

Lomas was in the business of making real estate loans primarily in the Southwestern portion of the United States. Because of the recession in the real estate industry, Lomas was forced to declare bankruptcy. At the time the plaintiff purchased the notes, they were of BBB quality, although Levi represented that the bonds were A quality. In the world of corporate bonds, a BBB rating is considered investment grade quality. Thus, they are safe enough for pension funds and other lower risk investors. Any rating below BBB is no longer investment grade quality. There is a considerable difference in the risk associated with federally insured certificates of deposit, which the plaintiff sold to purchase these notes, and BBB notes. The former is almost a risk free investment, while the latter does carry a much higher degree of risk.

The defendants have moved pursuant to Federal Rule 12(b)(6) and 12(b)(2) to dismiss this complaint. Their attack focuses on the first count, the Rule 10b–5 violation, because it is the sole basis of this court's jurisdiction. The defendants contend that the Rule 10b–5 claim is barred by the statute of limitations and that it fails to state a cause of action.

## STATUTE OF LIMITATIONS

In this circuit, the statute of limitations for Rule 10b–5 claims have been borrowed from the Illinois Blue Sky Laws. *Teamsters Local 282 Pension Trust Fund v. Angelos*, 815 F.2d 452 (7th Cir.1987). The seventh circuit has determined that the limitation period is three years. Ill.Rev.

---

1. The first count of this complaint alleging a violation of Rule 10b–5 is the only basis for this court's jurisdiction. The other two claims, common law fraud and breach of fiduciary duty, are pendent state claims.

Stat. ch. 121½, para. 137.13D (Smith–Hurd 1960). The court reversed course in *Short v. Belleville Shoe Manufacturing Co.*, 908 F.2d 1385 (7th Cir.1990), holding that the limitation period for Rule 10b–5 claims should be derived from the limitations applicable to express private civil remedies contained in the Securities Exchange Act of 1934 and the Securities Act of 1933. The court determined that the appropriate limitation period was one year with a three year period of repose. § 13 of the Securities Act of 1933.[2] The court found § 13 as the most suitable limitations period because it was designed by Congress to apply to the same type of conduct that comprises most Rule 10b–5 claims: "fraudulent misstatements or omissions in connection with the purchase or sale of securities." *Id.* at 1390. This conclusion had previously been reached by the third circuit in *In re Data Access Systems Secur. Litigation*, 843 F.2d 1537 (3rd Cir.1988). The second circuit followed suit on November 8 in *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2nd Cir.1990).

The question before the court, with a slight twist, is whether *Short* applies retroactively. *Short* was decided on July 30, 1990, almost four months before the plaintiff filed his complaint. On October 24, 1989, the plaintiff sent a letter to the Vice President of PaineWebber, Grant Ellington, complaining about the very same actions that are alleged in the first count of his complaint. Therefore, for purposes of the statute of limitations the plaintiff had discovered this malfeasance no later than October 24, 1989. Because his claim accrued on that date, the plaintiff had three months to discover the *Short* opinion and still comply with the new one year statute of limitations.

The defendant argues that there is no question of retroactivity in this case because the complaint was filed subsequent to the *Short* decision. Retroactive treatment is when a decision is "appl[ied] to conduct that occurred before the decision was rendered." *E.E.O.C. v. Vucitech*, 842 F.2d 936 (7th Cir.1988). Therefore, this is a case where the retroactive application of a decision is at issue. In deciding this issue, the court will consider the fact that the complaint was filed after the *Short* decision.

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court held that a newly announced rule of law should not be applied retroactively when 1) the new rule overrules clear past precedent on which litigants may have relied, 2) its purpose and effect would not be substantially furthered by retroactive application, and 3) imposing the rule retroactively would impose hardship or injustice. *Id.* at 106–07, 92 S.Ct. at 355–56. There is a presumption favoring retroactive treatment. *E.E.O.C. v. Vucitech*, 842 F.2d 936 (7th Cir.1988).

*Short* overruled existing seventh circuit precedent which had previously looked to state law in determining the appropriate limitation period. See e.g. *Teamsters Local 282 Pension Trust Fund v. Angelos*, 815 F.2d 452 (7th Cir.1987). The defendant, however, argues that *Short* was clearly foreshadowed by recent Supreme Court and seventh circuit cases and therefore reliance on past precedent was unjustified. See *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983) ("In some circumstances, however, state statute of limitations can be unsatisfactory vehicles for the enforcement of federal law.") *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (Using antitrust statute of limitations for RICO claims). In *Norris v. Wirtz*, 818 F.2d 1329 (7th Cir.1987; Easterbrook, J.) the court specifically expressed its disfavor with using the state statute of limitations for § 10(b) claims. Perceiving that the federal courts had made a mistake, Judge Easterbrook, in an insightful opinion, stated:

> As practitioners and scholars agree that the result is a mess, they also believe

---

**2.** Section 13 allows a plaintiff to bring an action one year after discovery, and in no event "more than three years after the sale." 15 U.S.C. § 77m.

that the courts missed a turn. Courts should have drawn the periods of limitations for the implied rights from the periods of limitations for the express rights. Congress has not been silent about limitations for securities law in general, the usual problem that leads federal courts to turn to state law; it has only been silent with respect to rights it did not create. Whenever it created a federal right to sue, it also created a statute of repose no longer than three years. That is what the courts should have used.

Id. at 1333.

The plaintiff argues that because the seventh circuit in *Davenport v. A.C. Davenport & Son,* 903 F.2d 1139 (7th Cir.1990), recently affirmed its position that state law governs the limitation period in Rule 10b–5 claims, he could justifiably rely on that holding. If the plaintiff had filed his complaint before the *Short* decision, this argument would have considerably more merit. This is not that case.

The plaintiff cannot have his cake and eat it too. He claims that in light of the *Davenport* decision, he had a reasonable basis to believe that the statute of limitations was three years. *Davenport,* however, was decided on June 6, 1990, less than two months before the *Short* decision. If he was cognizant of the law in this circuit as of June 6, 1990, he would not also contend that he was unaware of a seventh circuit opinion issued on July 30, 1990, less than two months later.[3] This is bolstered by the fact that he had almost three months after the *Short* decision to file his

action and still comply with the new limitation period.

Even if this court were to assume that the plaintiff was unaware of the *Davenport* decision, this would still not help the plaintiff. Previous seventh circuit opinions as well as decisions of the Supreme Court have cast serious doubt on borrowing state statutes of limitations for federal claims. See *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983); *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *Norris v. Wirtz,* 818 F.2d 1329 (7th Cir.1987). While this court is not suggesting that the plaintiff should have anticipated a change in the law, this case is clearly distinguishable from one where an action is filed and then a new decision changes past precedent which was clearly relied upon. Recent developments in the law should have alerted the plaintiff that a change could come at any time. This is buttressed by the opinion of the second circuit joining the third and seventh circuits on November 8, 1990, abandoning the practice of borrowing state statute of limitations for § 10(b) claims. *Ceres Partners v. GEL Associates,* 918 F.2d 349 (2nd Cir.1990).[4] Thus, this case is distinguishable from the only case in this district which applied *Short* prospectively. See *Reshal Associates, Inc. v. Long Grove Trading Co.,* 754 F.Supp. 1226 (N.D.Ill. 1990; Rovner, J.); (claim was filed several months before the decision in *Short*).[5]

The second requirement is that the purpose and effect of the newly announced

3. The *Short* opinion was published on September 10, 1989. Thus, the plaintiff had more than six weeks after its publication to discover the decision and still comply with the statute of limitations.

4. In *Welch v. Cadre Capital,* 923 F.2d 989 (2nd Cir.1991), the second circuit decided not to apply this new rule retroactively. The facts in *Welch,* however, are distinguishable from the facts in this case. At the time the plaintiffs in *Welch* discovered their cause of action, early 1987, no circuit court had held that the statute of limitations for § 10(b) claims should be derived from federal law. In addition, the plaintiffs in *Welch* had no opportunity to comply with the change in the statute of limitations.

By the time that *Ceres* was decided, the one year statute of limitations had long expired. In contrast, the plaintiff in this case was aware of the growing dissatisfaction expressed by federal courts with applying state statute of limitations to federal claims. In addition, the plaintiff in this case had almost three months after the *Short* decision to comply with the new limitation period.

5. All other courts in this district have applied *Short* retroactively. See *Flaherty v. Greenblatt,* Case No. 88 C 9755, 1990 WL 172698 (N.D.Ill. 1990; Marovich, J.); *In re VMS Secur. Litigation,* 752 F.Supp. 1373 (N.D.Ill.1990; Conlon, J.).

rule would not be substantially furthered by retroactive application. *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355. When addressing this factor in the context of a statute of limitations, the court should look at the remedial interest and the interest of uniformity and certainty. *Landahl v. PPG Industries, Inc.,* 746 F.2d 1312, 1315 (7th Cir.1984). The plaintiff argues "that purpose [achieving uniformity and certainty] will only be minimally affected if, for a brief period, claims such as those asserted by Plaintiff in this action may be governed by the prior rule." The court disagrees with the plaintiff's contention. Allowing the plaintiff to pursue this action nearly four months after the seventh circuit decided *Short,* would undermine the goals of uniformity and certainty. Because this action was filed subsequent to the *Short* decision, prospective treatment in this case would raise more questions than it would answer. How many months can a plaintiff wait after this decision and still expect prospective treatment? Is four months adequate or should the time period be longer? Each case would need to be decided on its own facts. Instead of adding uniformity and certainty, prospective treatment in this case would leave the law in a state of flux.

The final requirement is that applying this decision retroactively would be unjust. Again the plaintiff can not avoid the fact that he filed his action nearly four months after the *Short* decision. This certainly is not a case where one day the plaintiff had a viable claim and the next day it was gone. The plaintiff's action was still viable well after the *Short* decision. There is no inequity in applying a decision to a complaint that was filed more than three months after the decision was decided. This is especially true in a case, such as this, where the limitations period is only one year.

Because the plaintiff has failed to establish any element in *Chevron,* the court dismisses the first count of plaintiff's complaint. Because the remaining claims are pendent state claims, the court must also dismiss counts two and three for lack of jurisdiction. *United Mine Workers v.*

*Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).