Moise KATZ, Plaintiff–Appellant,

v.

HOUSEHOLD INTERNATIONAL, INC., Donald C. Clark and Edwin P. Hoffman, Defendants–Appellees.

No. 93–2284.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1993.

Decided Sept. 28, 1994.

Jules Brody, Stull, Stull & Brody, Joseph H. Weiss, Robert A. Skirnick, Robert Harwood, Weschsler, Skirnick, Harwood, Halebian & Feffer, New York City, Kevin M. Forde, Mary Anne Mason (argued), Forde & Associates, Chicago, IL, for plaintiff-appellant.

Steven P. Handler (argued), William P. Schuman, Christopher M. Murphy, McDermott, Will & Emery, Chicago, IL, for defendants-appellees.

Before KANNE and ROVNER, Circuit Judges, and CURTIN, District Judge.*

ILANA DIAMOND ROVNER, Circuit Judge.

Moise Katz filed suit for securities fraud against Household International, its Chairman of the Board and Chief Executive Officer, Donald C. Clark, and its President and Chief Operating Officer, Edwin P. Hoffman, on November 13, 1991. Purporting to represent a class of Household Securities purchasers,[1] Katz invoked sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t(a), and Rule 10b–5, 17 C.F.R. 240.10b–5. On December 9, 1991, the defendants filed a motion to dismiss for failure to state a claim. The court did not permit Katz to file a written response to the motion, but did hear oral argument on December 19 and granted the motion from the

---

* The Honorable John T. Curtin of the United States District Court for the Western District of New York, sitting by designation.

1. Katz claimed to represent "all persons and entities who purchased Household securities during the period July 22, 1991 through October 31, 1991 ... and were damaged thereby." (R. 15 ¶ 11)

bench on that day. Katz filed an amended complaint on January 2, 1992, and the defendants again moved for dismissal. Just as before, the court denied Katz an opportunity to respond in writing, and, after allowing oral argument at a January 16 hearing, granted defendants' motion from the bench. In both instances the court provided only a cursory explanation of its reasons for dismissal. (*See* December 19, 1991 Tr.; January 16, 1992 Tr.) Katz did not appeal, and after the time to do so had elapsed, the defendants moved for sanctions under Fed.R.Civ.P. 11. The court granted that motion on March 15, 1993 in a brief written order, and on April 26, 1993, ordered Katz and his attorney to pay the defendants' costs and expenses, which, according to the court's calculation, amounted to $54,111.99. Katz and his attorney appeal from that award. Because we find that the district court abused its discretion, we vacate its award and remand for reconsideration in light of this opinion.

## I.

Katz' complaint alleged that the defendants released "materially false and misleading positive information and misrepresent[ed] the facts about the business, operations, financial condition, and future business prospects of Household" for the purpose of artificially inflating the price of Household stock. (R. 15 ¶ 43; *see also id.* ¶¶ 1–2.) [2] In particular, the complaint points to three statements made during the class period suggesting that Household expected to experience growth in its earnings during the remainder of 1991 and 1992. First, the complaint cites a July 22, 1991 article in *Barron's,* which was based on an interview with Clark and stated in part:

> ... Donald C. Clark, chairman and chief executive officer, feels the company has come through the recession in good shape. Following what was basically a flat first half for earnings, Clark sees a slight improvement in the second half and an accel-

eration in 1992, if the economy doesn't stumble again.

\*     \*     .\*     \*     \*     \*

> Delinquencies on consumer receivables are improving, and chargeoffs may have peaked in the second quarter—or will in the third.

\*     \*     \*     \*     \*     \*

> Clark expects continued brightening of the delinquency picture through the rest of the year.

(*Id.* ¶ 28.) Next, the complaint cites Household's August 8, 1991 Form 10–Q, quoting this comment on the company's consumer business in the United Kingdom and Australia:

> The Company continues to expect favorable full year comparisons for these problem businesses.

(*Id.* ¶ 31.) Finally, the complaint cites a September 4, 1991 presentation to securities analysts, which was covered in the September 6, 1991 Dow Jones Professional Investors Report ("PIR"). The PIR stated in part:

> In an half-day presentation to roughly 100 buy and sell side analysts, the Company's talk about its significant earnings growth possibility has many investors convinced the Company's stock price will continue to advance.

\*     \*     \*     \*     \*     \*

> Legg Mason Wood Walker analyst David Penn concurs, adding that the number one thing that probably stood out at the meeting was the Company's earnings growth potential.

> Household Finance "basically came in and said earnings would grow meaningfully over the next couple years."

\*     \*     \*     \*     \*     \*

> While the Company didn't give any significant earnings figures at the meeting, it did

---

2. Katz' amended complaint did not differ significantly from his original complaint. We review only his amended complaint at this point, as it presumably represents his best effort to state a claim against Household.

repeat a previous forecast that net income would be a record this year.

(*Id.* ¶ 33.)

According to Katz, those three statements were false and misleading in two respects:

> The representations were false and misleading because, as defendants knew, Household's actual, non-public results contradicted their public statements and because, in making their representations, they claimed that they assumed a continuing, sometimes even severe, economic recession, whereas, as they disclosed at the end of the Class Period, their representations depended on an "economic rebound."

(*Id.* ¶ 2.) Thus, although attempting to state only a single claim, the complaint set out two distinct theories as to why Household's predictions were fraudulent: (1) nonpublic financial information in Household's possession made clear that the predictions were unreasonable, and (2) Household stated that it would experience growth in earnings even if the recession were to continue, when it privately knew that its optimistic predictions depended on overall economic recovery.

After twice dismissing the complaint without written explanation, the district court explained its imposition of sanctions in this way:

> In order to maintain a securities fraud action such as the case at bar, the complaint must set forth facts from which a plausible inference of fraudulent intent could be drawn. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627–628 (7th Cir.1990). As explained in *DiLeo:*
>
>> The story in this complaint is familiar to securities litigation. At one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud. 'Must be' is the critical phrase, for the complaint offers no information other than the differences between the two statements of the firm's condition. Because only a fraction of financial dete-

riorations reflects fraud, plaintiffs may not proffer the different financial statements and rest. Investors must point to some facts suggesting that the difference is attributable to fraud.

*Id.*

In the case at bar, neither the original nor the amended complaints identified any *facts* which suggested the financial deterioration was attributable to fraud. Plaintiff's original and amended complaints were therefore not reasonably grounded in either fact or law.

(Mar. 15, 1993 Mem.Op. at 2–3.) (1993 WL 75159.)

## II.

Fed.R.Civ.P. 11 provides in relevant part: [3] The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

We review the district court's Rule 11 determination for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990). Although deferential, that standard "will not prevent this court from ensuring that district judges reflect seriously, and consider fully, before imposing (or

---

**3.** The December 1993 amendment to Rule 11 does not apply here, as the district court's order was entered before it became effective. *See Land*

*v. Chicago Truck Drivers,* 25 F.3d 509, 516 (7th Cir.1994).

denying) sanctions." *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 936 (7th Cir.1989) (en banc). As the Supreme Court has explained, "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Cooter & Gell*, 496 U.S. at 405, 110 S.Ct. at 2461; *see also Milwaukee Concrete Studios Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 448 (7th Cir.1993). In addition, "a district court abuses its discretion when it [grants or] denies sanctions with no explanation, or with an explanation that is so conclusory that the appellate court cannot review the substance of its decision." *LaSalle National Bank v. County of DuPage*, 10 F.3d 1333, 1338 (7th Cir.1993). At the same time, even a perfunctory order may at times suffice if the award of sanctions was clearly appropriate from the face of the record. *Ross v. City of Waukegan*, 5 F.3d 1084, 1088–89 (7th Cir.1993).

■ The district court's order in this case is problematic for several reasons. First, it is cursory and somewhat unclear, leaving us in doubt about the actual basis for the imposition of sanctions. The first sentence of the above-quoted portion of the order seems to indicate that Katz' error was in failing to sufficiently allege that the defendants acted with fraudulent intent. However, the order then quotes a portion of our opinion in *DiLeo* that is unrelated to the issue of intent, but focuses instead on the failure to specifically allege any fraudulent statements. The sentence that follows the quote seems to indicate that the court's concerns were of the latter nature.[4] Our difficulty in discerning the court's reasons for imposing sanctions is compounded by the court's failure to clearly explain its dismissal of either complaint. Of even more concern than the above-noted am-

biguity, however, is the fact that the court's order addresses only one of the theories underlying Katz' claim. That is clear from its summary of the complaint:

> Specifically, plaintiff asserts that defendants misled the investing public into believing that Household's earnings projections were based upon the assumption that the economic recession would continue through 1991. According to plaintiff, defendants hid from the public the alleged fact that Household's 1991 projections assumed an economic upturn.

(Mar. 15, 1993 Mem.Op. at 1.) The order does not anywhere acknowledge Katz' second theory, that the statements were fraudulent because they were inconsistent with financial information in the defendants' possession.

It bears noting that, although we may not have reached the same result, the imposition of a sanction in at least some amount may not have been an abuse of discretion. The district court did address Katz' primary contention—that when, in July, August and September of 1991, Household predicted that its earnings would improve during the remainder of that year and the next, it knew that its own growth depended on economic recovery, but publicly represented that it would achieve favorable results even if the recession continued. Although we are unsure of the district court's exact objection to this theory, it is clear from the face of the complaint that the theory was not supported by any specific factual allegations. In spite of articulating a theory of active misrepresentation (as opposed to mere omission),[5] Katz has pointed to no statements in which Household actually asserted that its optimistic forecast was, in his terms, "recession proof."

None of the three statements on which Katz bases his complaint contains that repre-

---

4. Katz has pointed out that the sentence following the *DiLeo* quote seems to say that the financial deterioration must have been caused by the fraud. We assume, however, that the court meant to reiterate the *DiLeo* requirement that the difference in public statements must have been attributable to fraud.

5. Although Katz has characterized his claim as entailing a "failure to disclose" (Katz brief at 2, 11), this portion of his claim is really based on a theory of misrepresentation. In addition to quot-

ing the above-mentioned alleged misrepresentations, the complaint contained allegations such as "[d]efendants expressly represented that their operating plan assumed a continuing global economic recession" when they either knew or should have known that "the United States and world economies continued to be in the midst of an economic recession and that the economies ... would have to rebound for defendants' representations to be correct." (R. 15 ¶ 32; *see also id.* ¶ 36.)

sentation. The August 8, 1991 Form 10–Q, which predicted "favorable full year comparisons" for certain foreign businesses, did not mention overall economic conditions and so in no way linked its predictions to any broader trends. (*See* R. 15 ¶ 31.) The September 4, 1991 presentation to analysts was (according to the PIR) similarly optimistic about Household's earnings growth potential without mentioning either recession or recovery. (*See id.* ¶ 33.) And as for the July 22, 1991 *Barron's* article, not only did it not suggest that the positive expectations would be realized even in the face of a continued recession, it made clear that Household's optimism was based on its assumption that the recession had subsided:

> ... Donald C. Clark, chairman and chief executive officer, feels the company *has come through the recession* in good shape. Following what was basically a flat first half for earnings, Clark sees a slight improvement in the second half and an acceleration in 1992, *if the economy doesn't stumble again.*

(*Id.* ¶ 28 (emphasis added).)

The complaint also focuses on October 31, 1991, when Household "announced disappointing third-quarter results and turned cautious in its outlook." (*Id.* ¶ 37.) The notion that Household's earlier optimistic predictions were, despite their supposed (but unspecified) representations to the contrary, actually based on a prediction of economic recovery, Katz derives from this October 31, 1991 press release:

> [A]ll of the economies in which we operate have shown no real improvement and may even have slipped somewhat.

\* \* \* \* \* \*

Donald C. Clark, Chairman and Chief Executive Officer, said "Earlier signs of an economic rebound have faded, and we now doubt that we will see for the full year the extent of improvement we expected, particularly in our foreign operations, where economic conditions continue to be severe.

\* \* \* \* \* \*

Improvement in operating results in the United Kingdom and Australia has been slower than the Company previously anticipated due to weak economic conditions. It now appears that the Company's foreign units will not return to profitability until 1992.

\* \* \* \* \* \*

The rate of improvement, however, will depend on the pace of economic recovery, and will likely be slower than previously thought.

(*Id.* ¶ 39.) True, the press release does suggest that the earlier predictions were based on the expectation of economic recovery and that Household's poor performance was related to overall economic conditions. Contrary to Katz' assertions, however, it is entirely consistent with Household's July 1991 statement and does not contradict those made in either August or September.[6]

In light of the complaint's failure to identify a single statement containing the alleged misrepresentation, we might be inclined to conclude that the district court did not abuse its discretion in imposing a sanction, notwithstanding the brevity and imprecision of its order. Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Even the most superficial review of our case law would have made clear that Katz' complaint did not

---

**6.** For the first time at oral argument, Katz' lawyer suggested that the July, August and September 1990 statements were misleading regarding Household's private assumption of economic recovery because they failed to correct statements in Household's 1990 annual report, published in February 1991, that earnings would improve even if the recession continued. There are several problems with that theory. First, although the complaint did quote the annual report as part of its "Factual Background" section (*see* R. 15 ¶¶ 18–24, it did not rely on the report to support

its fraud charge. In addition, although the annual report did (unlike the later statements) at least mention the continuation of the recession, it did not actually represent that Household's earnings would increase regardless of what might happen in the broader economy. Moreover, the annual report predicted only that the recession would continue for the first half of the year, so that it was in no way related to those statements that were made in July, August and September. (*See id.*)

fulfill that requirement. The law is clear, for example, (as it was when Katz filed his complaint) that Rule 9(b) requires specific identification of allegedly fraudulent statements. *See, e.g., Graue Mill Development Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992–93 (7th Cir.1991) (must state the "specific content of the false representations as well as the identities of the parties to the misrepresentation."); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990) ("To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."). Although Household's alleged assertion that its financial condition would improve even if the economy did not was the main basis for Katz' charge of fraud, he failed to identify a single instance in which Household actually made any such statement.

The portion of *DiLeo* that was included in the district court's sanction order also supports its decision. In *DiLeo*, plaintiffs had alleged that the defendant accounting firm "became aware that a substantial amount of the receivables reported in Continental's financial statements were likely to be uncollectible." The complaint gave no examples of bad loans, however, and did not explain how the defendants should have recognized that their figures were inaccurate. We therefore found that the claim in *DiLeo* boiled down to nothing more than a case of "rosy predictions" gone awry and that the complaint had been properly dismissed. Although Katz' fraud claim rested on a different type of factual basis, *DiLeo* nonetheless should have put Katz on notice that his unsupported allegations were insufficient.

Ultimately, however, we cannot affirm the district court's imposition of sanctions because of its failure even to note Katz' alternative theory. In addition to the hidden assumption theory, Katz also alleged that at least the September statement was fraudulent because Household by that time either

knew or should have known, based on information in its possession, that it was not doing as well as previously anticipated and that its optimistic forecasts were no longer reasonable.[7] Although not the centerpiece of Household's complaint, this theory was clearly asserted. First, it was included in the above-quoted portion of paragraph two, which set out Katz' theory in general. It was also contained in two subsequent paragraphs. Prefacing its quote from the September 1991 PIR report, the complaint stated:

> As recently as September 4, 1991, when operating results of the first 2 months of the third quarter were available to the defendants, Household gave a half-day presentation to about 100 securities analysts in New York City....

(R. 15 ¶ 33.) It also stated:

> ... [T]he defendants continued to lead the investment community to believe that such continued and impressive earnings growth would be achieved in the face of a continued recessionary environment ... when in fact, the defendants ... had available to them actual, non-public results of the Company's performance over the first two-thirds of the third quarter.

(*Id.* ¶ 36.)

Although there may well have been problems with this theory that made its dismissal appropriate, the law is nonetheless clear that projections may be actionable if they are made with the knowledge that they are incorrect or are otherwise without reasonable basis. *See generally,* Thomas Lee Hazen, *The Law of Securities Regulation* § 3.7 (2nd ed. 1990 & Supp.1993). The theory was not therefore obviously unwarranted by existing law. Nor was it necessarily without factual basis. Although plaintiffs must specifically identify allegedly fraudulent statements, they are not required "to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.1992); *see also Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992). That showing

---

7. Of course, this theory, based only on Household's September statement, would have affected a smaller class of plaintiffs.

requires facts to which plaintiffs presumably lack access prior to discovery. The district court's sanctioning of the complaint without even acknowledging that it contained this alternative theory was therefore an abuse of discretion.

### III.

Because the district court did not clearly explain its award of sanctions, adequate review of its decision has proven impossible. Some amount of sanctions to account for Katz' completely unsubstantiated allegations about the recession may ultimately be supportable, although we may not ourselves have chosen to impose them. Katz' second theory, however, is less obviously problematic. The district court's failure to discuss that theory or to explain why, to the extent that it rested on that theory, Katz' claim violated Rule 11 was an abuse of discretion. We also have serious reservations about whether $54,111.99 was reasonably incurred in responding to those portions of Katz' complaint that were so obviously without basis. On remand, the district court should assess a sanction only in the amount of those fees *reasonably* incurred in responding to sanctionable filings. *See, e.g., Pollution Control Industries of America v. Van Gundy,* 21 F.3d 152, 155–56 (7th Cir.1994); *Dubisky v. Owens,* 849 F.2d 1034, 1037 (7th Cir.1988).

The award of sanctions is VACATED and this case is REMANDED for reconsideration in light of this opinion.