**Moise KATZ, Plaintiff,**

v.

**HOUSEHOLD INTERNATIONAL, INC., Donald C. Clark, and Edwin P. Hoffman, Defendants.**

**No. 91 C 7280.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 24, 1995.

Robert D. Allison, Chicago, IL, Jules Brody, Stull, Stull & Brody, New York City, Robert Harwood, Wechsler, Skirnick, Harwood, Halebian & Feffer LLP, New York City, Joseph H. Weiss, Law Offices of Joseph H. Weiss, New York City, for plaintiff.

Steven P. Handler, William Paul Schuman, McDermott, Will & Emery, Chicago, IL, for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case comes before the Court on the Defendant's motion for a clarification of the Court's award of attorneys' fees in light of the instructions of the Court of Appeals on remand. The Defendant contends that the Plaintiff's complaint in its entirety was a sanctionable filing and points out that we have already taken evidence on the amount of fees it reasonably incurred in responding to it. Therefore, the Defendant argues we should award the amount we previously ascertained. We agree. For the reasons explained below, we grant the Defendant's motion.

## BACKGROUND

At the end of October, 1991, the Defendant company ("Household") released a statement that earnings would be lower than expected. Soon after the press release, its stock price went down. The Plaintiff ("Katz") claims to have been a holder of shares of stock in the Defendant company. About two weeks after the price drop, Katz filed a complaint on November 13, 1991, alleging securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). This Court granted Household's motion to dismiss Katz' complaint for reasons discussed in open court on December 19, 1991. We granted leave to refile. The Plaintiff then filed an amended complaint on January 2, 1992. On January 16, 1992, because Katz still failed to state a claim on which relief could be granted, we dismissed Katz' amended complaint.[1] Katz did not appeal either dismissal, and they became final and unappealable.

After Katz' time for appeal had lapsed, Household filed a motion for sanctions and an award of fees under Rule 11 of the Federal Rules of Civil Procedure ("Federal Rules" or "Fed.R.Civ.P."). On March 15, 1993, in a written order ("Order"), this Court granted Household's motion for sanctions and an award of fees under Rule 11 of the Federal Rules because the Court found that Katz filed his securities fraud complaint and

---

1. Neither this Court nor the Court of Appeals found any significant difference between the contents of the complaint and the amended complaint.

amended complaint without first engaging in a reasonable pre-filing inquiry to locate "facts from which a plausible inference of fraudulent intent could be drawn." (Order at 2). The Order stated, "Plaintiff's original and amended complaints were therefore not reasonably grounded in either fact or law." (Order at 3). After reviewing the affidavit of Household's counsel concerning costs and expenses incurred by them, and after considering arguments by both sides about the amounts in question, on April 26, 1993, we awarded fees and expenses in the amount of $54,111.99.

On September 28, 1994, the Seventh Circuit Court of Appeals vacated and remanded this Court's award of fees. *See Katz v. Household International, Inc.,* 36 F.3d 670 (7th Cir.1994). The Court of Appeals drew a distinction which we overlooked within Katz' complaint between a "primary theory" concerning misrepresentations about firm performance in a recessionary economy and an "alternative theory" concerning fraudulent future projections. The Court of Appeals held that this Court abused its discretion in granting the award on the ground that we failed to take note of Katz' alternative theory of securities fraud. In consequence, they held that review of the award "has proven impossible." *Id.* at 675–76.

The opinion of the Court of Appeals states, "we might be inclined to conclude that the district court did not abuse its discretion in imposing a sanction, notwithstanding the brevity and imprecision of its order," because "[e]ven the most superficial review of our case law would have made clear" that Katz' primary theory of securities fraud must fail.

*Katz,* 36 F.3d at 674–75. A reasonable pre-filing inquiry would have prevented Katz from inadequately pleading his primary theory of Household's alleged misrepresentations about firm performance in a recessionary economy. The Court of Appeals came to the same conclusion as this Court's Order by determining that neither the complaint nor the amended complaint alleged the circumstances of any purported misrepresentation with the particularity required under Rule 9(b) of the Federal Rules. *Id.* at 675 (citing *Graue Mill Development Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 992–93 (7th Cir.1991); *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990)). The Court of Appeals observed that Katz "failed to identify a single instance in which Household actually made [the statement that its financial condition would improve even if the economy did not]." *Katz,* 36 F.3d at 675.

The Court of Appeals nonetheless vacated this Court's award of fees after identifying an "alternative theory" we overlooked.[2] *Id.* The alternative theory involved "statements [that] were fraudulent because they were inconsistent with financial information in the defendants' possession." *Id.* at 693. The Court of Appeals construed the alternative theory to contain an allegation that Household's projections of future performance at its September 4, 1991, meeting with securities analysts did not lie within the safe harbor protection afforded by Securities and Exchange Commission ("SEC") Rule 175. *See* 17 C.F.R. § 230.175; *Arazie v. Mullane,* 2 F.3d 1456, 1465–66 (7th Cir.1993); *Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 513–14 (7th Cir.1989). "Projections may be

---

**2.** The Seventh Circuit's opinion states that the alternative theory was "clearly asserted." *Katz,* 36 F.3d at 675. The opinion states:

> According to Katz, those three statements were false and misleading in two respects:
> The representations were false and misleading because, as defendants knew, Household's actual, nonpublic results contradicted their public statements and because, in making their representations, they claimed that they assumed a continuing, sometimes even severe, economic recession, whereas, as they disclosed at the end of the Class Period, their representations depended on an "economic rebound."

(*Id.* ¶ 2.) Thus, *although attempting to state only a single claim, the complaint set out two distinct theories* as to why Household's predictions were fraudulent: (1) nonpublic financial information in Household's possession made clear that the predictions were unreasonable, and (2) Household stated that it would experience growth in earnings even if the recession were to continue, when it privately knew that its optimistic predictions depended on overall economic recovery. *Id.* at 672 (emphasis added). This Court agrees with the Court of Appeals that Katz' alternative theory was clearly asserted within a complaint that, "attempting to state only a single claim, ... set out two distinct theories...."

actionable if they are made with the knowledge that they are incorrect or are otherwise without reasonable basis." *Katz,* 36 F.3d at 675; *see generally,* Thomas L. Hazen, *The Law of Securities Regulation* § 3.7 (2nd ed. 1990 & Supp. 1994). The Court of Appeals indicated that the part of the complaint containing the alternative theory might not have been sanctionable under Rule 11.

We now understand that we gave inadequate attention to the collection of words in the complaint which established an alternative theory of securities fraud liability. We note that our expressed concern was to be faithful to the teachings of the Seventh Circuit that we should not tolerate the filing of frivolous complaints under Section 10(b) and Rule 10b–5. We presumed the Court of Appeals would recognize that we were giving effect to the policies behind those precedents summarized so admirably by Judge Easterbrook in *DiLeo v. Ernst & Young,* 901 F.2d 624, 626–28 (7th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). *DiLeo* urged us to be watchful about complaints that are filed with "no information other than the differences between [ ] two statements of [a] firm's condition," and reminded us that "Rule 9(b) require[s] the district court to dismiss [a] complaint[ ] which discloses none of the circumstances that might separate fraud from the benefit of hindsight." *Id.* at 627–28. We were also mindful of then Justice Rehnquist's lengthy and cogent admonitions about Rule 10b–5 "strike suits" in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 739–48, 95 S.Ct. 1917, 1927–32, 44 L.Ed.2d 539 (1975). Writing for the Court, Justice Rehnquist observed, "There has been widespread recognition that litigation under Rule 10b–5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general." *Id.* at 739, 95 S.Ct. at

1927. Without animus, we assessed sanctions in part as compensation to the vexed defendant, and in part as deterrence to fulfill the goal of the reduction in the number of frivolous and meritless lawsuits which are filed without proper investigation, in tremendous haste, and on the barest whiff of a securities fraud claim.

We note, as the discussion below will illustrate, the Court of Appeals might have decided the merits of the alternative theory in this case without remanding that part of the case back to this Court. The *DiLeo* court, after reviewing the merits, affirmed the dismissal of a securities complaint extraordinarily similar to this one, stating, "A remand would prolong the case without contributing to accurate resolution.... [W]e affirm the judgment in order to spare both the parties and the court gratuitous travail." *DiLeo,* 901 F.2d at 626. Understandably, in the case at bar, the Court of Appeals chose to remand the issue of sanctions so that we, as the court in closer proximity to the issues and parties involved, may ascertain whether the alternative theory as pled was sanctionable. They know that ten years on the federal bench has given this Court ample experience in securities law and that we always welcome the challenge and the inquiry that such cases bring.[3] Regrettably, we proceed in the absence of their input on the merits of the underlying securities theory which we overlooked.

We pause to wonder if the Seventh Circuit in remanding this case has repudiated *Pritchard v. Rainfair, Inc.,* 945 F.2d 185, 192 (7th Cir.1991). There, another panel of the Court of Appeals wrote, "the focus of a Rule 11 inquiry is generally 'on the motion or pleading as a whole, rather than on its parts,' and while we will not prohibit a district court from undertaking a point-by-point Rule 11 analysis, neither will we require it to do so."

**3.** For a sampling of this Court's cases ruling on various securities fraud issues, see, e.g., *Ziemack v. Centel Corp.,* 856 F.Supp. 430 (N.D.Ill.1994) (Duff, J.); *Schwartz v. System Software Associates, Inc.,* 813 F.Supp. 1364 (N.D.Ill.1993) (Duff, J.), *aff'd,* 32 F.3d 284 (7th Cir.1994); *Coe v. National Safety Associates, Inc.,* 137 F.R.D. 252 (N.D.Ill.1991) (Duff, J.); *Polansky v. PaineWebber Inc.,* 762 F.Supp. 768 (N.D.Ill.1991) (Duff, J.); *Frank E. Basil, Inc. v. Leidesdorf,* 713 F.Supp.

1194 (N.D.Ill.1989) (Duff, J.); *Kayne v. Paine-Webber Inc.,* 703 F.Supp. 1334 (N.D.Ill.1989) (Duff, J.); *Harrison v. Dean Witter Reynolds, Inc.,* 695 F.Supp. 959 (N.D.Ill.1988) (Duff, J.); *Bastian v. Petren Resources Corp.,* 699 F.Supp. 161 (N.D.Ill.1988) (Duff, J.), *aff'd,* 892 F.2d 680 (7th Cir.), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990); *Steinberg v. Illinois Co. Inc.,* 659 F.Supp. 58 (N.D.Ill.1987) (Duff, J.).

*Id.* (quoting *Melrose v. Shearson/American Express, Inc.,* 898 F.2d 1209, 1217 (7th Cir. 1990)). We shall proceed with the claim-by-claim Rule 11 analysis required on remand by the Court of Appeals.

## DISCUSSION

■ The Court of Appeals has provided us the opportunity to revisit our earlier ruling awarding fees in light of Katz' alternative theory of liability. They do not require this Court to revisit the award of fees *in toto.* They reached the same conclusion we did when they observed that Katz' primary theory was without reasonable basis. *Katz,* 36 F.3d at 675. They vacated the Order because they found that it "fail[ed] even to note Katz's alternative theory," *Id.* at 675. The Court of Appeals instructed us to decide what "portions of Katz' complaint [are] obviously without basis," *id.* at 676, and to set the award accordingly. We must "assess a sanction only in the amount of those fees *reasonably* incurred in responding to sanctionable filings." *Id.* (emphasis in original).

The issue before the Court is whether the alternative theory as contained in both the original and the amended complaint constituted a sanctionable filing when Katz filed its amended complaint in January, 1992. We note that the same defect which foretold the demise of the primary theory of active misrepresentation in Katz' complaint pertains to his alternative theory of fraudulent future projections. Accordingly, we find that the complaint and the amended complaint in their entirety are not reasonably grounded in fact or law.

### I. The Merits of the Alternative Theory

■ To state a claim under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5, a plaintiff must allege that "while buying or selling securities the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff's reliance on the defendant's actions caused plaintiff's injury." *Ziemack v. Centel Corp.,* 856 F.Supp. 430, 433 (N.D.Ill.1994) (Duff, J.) (citing *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)).

As to scienter, the plaintiff must allege that "the defendant acted with the intent to deceive, manipulate or defraud." *Id.* at 436 (citing *Ernst & Ernst,* 425 U.S. at 196, 96 S.Ct. at 1380–81). A plaintiff must plead scienter if the allegation of securities fraud concerns either a misrepresentation *or* an omission. *See Ernst & Ernst,* 425 U.S. at 212, 96 S.Ct. at 1390; Thomas L. Hazen, *The Law of Securities Regulation* § 13.4 (2nd ed. 1990 & Supp.1994).

■ In the Seventh Circuit, scienter includes not only an intentional or knowing state of culpability, but also a reckless state of culpability. *Rowe v. Maremont Corp.,* 850 F.2d 1226, 1238 (7th Cir.1988); *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1044 (7th Cir.), *cert. denied sub nom Meers v. Sundstrand Corp.,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977). Reckless conduct is defined as "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* at 1044–45.

■ Rule 9(b) of the Federal Rules requires that any allegation of fraudulent conduct be pled with particularity. *See Jepson v. Makita Corporation,* 34 F.3d 1321, 1327–28 (7th Cir.1993) (Rovner, J.). A plaintiff alleging either intentional, knowing, or reckless conduct under Section 10(b) and Rule 10b–5 must plead in detail the circumstances surrounding the alleged scienter. *See* Fed. R.Civ.P. 9(b); *DiLeo,* 901 F.2d at 627; Hazen, § 13.2.1. "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo,* 901 F.2d at 627.

SEC Rule 175 affords further protection to the making of forward looking statements. It states,

(a) A statement within the coverage of paragraph (b) of this section [which includes any statement of future economic performance] which is made by or on behalf of an issuer . . . shall be deemed not to

be a fraudulent statement (as defined in paragraph (d) of this section), unless it is shown that such statement was made or reaffirmed without a reasonable basis or was disclosed other than in good faith.

\* \* \* \* \* \*

(d) For the purpose of this rule the term *fraudulent statement* shall mean a statement which is an untrue statement of a material fact, a statement false or misleading with respect to any material fact, an omission to state a material fact necessary to make a statement not misleading, or which constitutes the employment of a manipulative, deceptive, or fraudulent device, contrivance, scheme, transaction, act, practice, course of business, or an artifice to defraud, as those terms are used in the Securities Exchange Act of 1934 or the rules or regulations promulgated thereunder.

17 C.F.R. § 230.175.

■ When a plaintiff directs an allegation of fraud to predictions of future economic performance made by a defendant, Rule 175 requires that the plaintiff must overcome a stronger than normal presumption that those predictions are nonfraudulent. *Wielgos,* 892 F.2d 509, 513 ("Rule 175(a) implies that once the issuer shows it has made a 'forward-looking statement', the burden of persuasion concerning 'reasonable basis' and 'good faith' rests with the plaintiff.").

■ The safe harbor created by Rule 175 protects a defendant from the beginning of the litigation, even at the stage of the original complaint. *See Arazie,* 2 F.3d at 1466; *Roots Partnership v. Lands' End, Inc.,* 965 F.2d 1411, 1418–19 (7th Cir.1992).[4] To be in accord with Rule 9(b), a plaintiff alleging a fraudulent projection of future performance must include in its pleading of scienter not only the facts and circumstances surrounding a threshold claim of fraudulent intent, but also the facts and circumstances surrounding the claim that the defendants made projections without good faith or otherwise without a reasonable basis. *See Arazie,*

2 F.3d at 1467 ("The plaintiffs have also failed to plead particular facts showing Bally's other allegedly fraudulent statements lacked a reasonable basis.").

The purpose of the safe harbor protection is to encourage the disclosure of projections. The Seventh Circuit has reasoned that Rule 175, adopted in 1978, minimizes the disincentives on corporate disclosure created by the securities fraud laws so that investors may have information directly from the companies themselves about how they believe their economic performance will be. *Wielgos,* 892 F.2d at 514. "If enterprises cannot make projections about themselves, then securities analysts, newspaper columnists, and charlatans have protected turf." *Id.* Firms may make mistakes, and no matter in which direction a mistaken projection is biased, some investors will always be disappointed. "Thus the role of a safe harbor: the firm is not liable despite error." *Id.* To give full effect to the proactive disclosure policies behind the combination of SEC Rule 175 and Federal Rule of Civil Procedure 9(b), we recognize that a district court might on occasion have to supply the added protection afforded by the deterrence function contemplated within Federal Rule of Civil Procedure 11.

■ We now turn to the parts of the complaint where the Court of Appeals held that Katz stated his alternative theory of liability. This Court cannot find the particular facts setting forth the circumstances of Household's alleged fraudulent scienter. Nor do we detect facts set forth with particularity implying a lack of good faith or a lack of a reasonable basis for the projections of future performance. The amended complaint reported:

As recently as September 4, 1991, when operating results of the first 2 months of the third quarter were available to the defendants, Household gave a half-day presentation to about 100 securities analysts in New York City....

\* \* \* \* \* \*

... [T]he defendants continued to lead the investment community to believe that such

---

**4.** The discussion of Rule 9(b) requirements in *Arazie* rests soundly on two 1991 cases with which the plaintiffs should no doubt have been familiar prior to filing the complaints: *DiLeo v.*

*Ernst & Young,* 901 F.2d 624 (7th Cir.1991), and *Graue Mill Development Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988 (7th Cir.1991). *See Arazie,* 2 F.3d at 1465.

continued and impressive earnings growth would be achieved in the face of a continued recessionary environment ... when in fact, the defendants ... had available to them *actual, non-public results* of the Company's performance over the first two-thirds of the third quarter.

(Amended Complaint, ¶¶ 33, 36) (emphasis added).

After reviewing the amended complaint, we must determine what "actual, non-public results" Katz alleges that Household failed to disclose at the September 4, 1991 meeting. The above quoted excerpt contains all that Katz ever alleged on the matter in either the complaint or the amended complaint. Katz never claimed any non-public financial results in particular, even though this Court gave Katz every opportunity to do so in oral arguments. On January 16, 1992, this Court heard arguments on the motion to dismiss the amended complaint.

MR. HARWOOD [Plaintiff's Counsel]: Well, here is what they said. They said in the September 4th meeting—and they were now two-thirds through the third quarter—they said in essence, "The future looks bright. It looks good for us and the numbers that we said previously look good, we stick with them, we don't foresee a downturn.

This is in, as I said, two-thirds through the third quarter. Now in this age of computers and instant information and tabulations, we won't think it's plausible for them to believe that they were not going to have to report a terrible third quarter, when they did report a terrible third quarter—

THE COURT: Mr. Harwood, did they say when they said the future looks bright that "This quarter we're doing well"?

MR. HARWOOD: They said that this quarter we are doing well. They didn't say—I think it's in paragraph 14—I'm sorry, page 14 of the amended complaint, your Honor, "The company's talk about a significant earnings growth possibility has many investors convinced the company's stock price will continue to advance"—

THE COURT: Wait, don't read too fast, first of all. Second of all, they talked about a growth possibility?

MR. HARWOOD: "The company's talk about its significant earnings growth possibility has many investors convinced the company's stock price will continue to advance.

"Another analyst said that the presentation—he called the presentation a bang-up job and says it was very convincing that they know their business. Household Finance basically came in and said earnings would grow meaningfully over the next couple of years."

(January 16, 1992, Tr. at 10–11). The transcript shows that this Court took aim at Katz' allegation that the statement of Household's "growth possibility" was fraudulent. Throughout the colloquy, Plaintiff's counsel never presented to the Court an allegation of a single specific non-public fact which Household might have possessed which would have made the projections stated to analysts untrue, made with bad faith, or made without reasonable basis. Stating that the age of "computers and instant information" makes it "plausible" that the defendants had non-public information does not rise to the test.

More detailed complaints than those of Mr. Katz have failed to pass the particularity test of Rule 9(b). In *Arazie*, which rests on clear pre–1992 precedent, the plaintiff's allegations that the defendant's projections of future performance were fraudulent were inadequate in the view of the Seventh Circuit:

> For example, plaintiffs allege Bally became aware, or should have become aware, that the New Jersey Casino Commission might limit its ability to obtain cash from its casino in early 1990. . . . The stockholders refer to no document, meeting, or transaction which could or should have alerted Bally that the Commission objected to the upstreaming of cash before the financial review and report following the $50 million loan.

> \*   \*   \*   \*   \*   \*

> They support their allegation that Bally knew it faced a 'liquidity crisis' in spring 1990 on the following assertions: "internal memos" predicted cash short falls and stiff competition; the company obtained a loan from a subsidiary and hired an investment banker to conduct a stock-for-debenture swap; and its fitness center subsidiary was generating less cash. . . . Plaintiffs' refer-

ences to unreleased or internal information that allegedly contradict the public statements are scanty.... All the complaint says is "Bally's internal documents admitted...." It does not indicate who prepared the projected figures, when they were prepared, how firm the numbers were, or which Bally officers reviewed them.... [T]he plaintiffs allege that officers Chandler and Johnson "received a memo...." But as the district court pointed out, the plaintiffs did not say who sent the memo, when it was received, or whether it reflected a final determination that cash flow would be inadequate.

*Arazie*, 2 F.3d at 1467. As the opinion sets out, the two memos described above, and at least one other memo "even more specific" for inferring fraud, were pleaded in Arazie's amended complaint. *Id.* Even the pleading of three internal memos supporting an inference of a "liquidity crisis" did not, without more, satisfy the requirements of Rule 9(b) when the plaintiffs have directed their allegation of securities fraud to projections of future performance. *Id.*

Katz failed to allege any non-public facts, including even scanty allusions to internal memoranda. In neither the complaint nor the amended complaint did Katz ever plead a case of securities fraud with the particularity required under Rule 9(b). Katz' complaint failed to plead scienter with the requisite particularity to overcome Household's protection under the Rule 175 safe harbor.[5] Consequently, their complaint and amended complaint were pleaded without any reasonable basis in law or in fact.

## II. Award of Fees Based on a Sanctionable Alternative Theory

■■■ To assess the validity of our earlier sanction, we must apply the version of Rule 11 in effect at the time of the original motion. In the event that counsel "files pleadings that are not reasonably based in law or in fact, or that are designed to harass, then 'the court upon motion or upon its own initiative, shall impose ... an appropriate sanction.'" *City of East St. Louis v. Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois*, 986 F.2d 1142, 1143 (7th Cir.1993) (citation omitted). Counsel must "make a reasonable inquiry in advance of filing to ensure that no action 'for any improper purpose' is filed." *Id.*

Neither the original nor the amended complaint identified any specific *facts* which suggested that Household had made a false statement of its economic outlook in the recession. Nor did they identify any specific *facts* which suggested that Household possessed particular non-public documents that would establish a lack of good faith or reasonable basis for making projections. Katz' original and amended complaints were not reasonably grounded either in fact or in law.

Since we find that Katz' alternative theory of relief is equally ungrounded in fact or in law as the primary theory, we find the complaint in its entirety to be sanctionable. The failure to plead securities fraud with the particularity required under Federal Rule 9(b) strongly suggests Katz' failure to make a reasonable pre-filing inquiry as required by Federal Rule 11.

Our previous fee award was based on the amount of fees and expenses Household expended in responding to the original and amended complaint in their entirety. On remand, we find that both the primary and alternative theory as presented in the original and amended complaints constituted sanctionable filings. We base the award on

---

5. For a sampling of appellate cases from other circuits which elaborate the 9(b) particularity requirement for forward looking statements and then hold for dismissal, see, e.g., *Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 209–12 (4th Cir.1994); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1277–78 (D.C.Cir. 1994); *Raab v. General Physics Corp.*, 4 F.3d 286, 288–89 (4th Cir.1993); *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520–21 (5th Cir.1993); *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 644–46 (3d Cir.1989); *Billard v. Rockwell International Corp.*, 683 F.2d 51, 57 (2d Cir. 1982).

Related 9(b) cases from the Second Circuit involving statements that are not projections include *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 961 (2d Cir.1987); *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982); *Segal v. Gordon*, 467 F.2d 602, 606 (2d Cir.1972).

remand on the amount of fees and expenses Household used in responding to the entire complaint. The Court's award of fees is appropriate. *See Gold v. Fields,* 1993 Fed. Sec.L.Rep. (CCH) ¶ 97,966, 1993 WL 212672 at \*5 (S.D.N.Y.1993); *Kushner v. DBG Property Investors, Inc.,* 793 F.Supp. 1161, 1179 (S.D.N.Y.1992) (both cases ruling award of fees under Rule 11 proper where securities complaint failed to plead fraud with particularity).

### CONCLUSION

For the forgoing reasons, Defendant Household's Motion for Clarification of This Court's Orders of March 15 and April 26, 1993, is granted. Plaintiff Katz' complaint and amended complaint were sanctionable filings in their entirety. The Court grants Household an award of fees of $54,111.99 with interest from the date of this Memorandum Opinion, having found that this is the amount Household reasonably incurred in responding to the Plaintiff's filings.